**Robert J. ALDERMAN,
Plaintiff-Appellant,**

v.

**TANDY CORPORATION, d/b/a Radio
Shack, Defendant-Appellee.**

**No. 82–3019.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 5, 1983.

Eugene S. Zimmer, Anthony B. Askew, Atlanta, Ga., for plaintiff-appellant.

Michael C. Addison, Tampa, Fla., for defendant-appellee.

Before TJOFLAT and HILL, Circuit Judges, and SIMPSON, Senior Circuit Judge.

JAMES C. HILL, Circuit Judge:

Robert J. Alderman brought suit in the district court against Tandy Corporation for patent infringement and violation of a trade secret agreement. The jury rendered a verdict against Alderman on the trade secret claim but returned an advisory verdict in Alderman's favor on the infringement claim. The judge disregarded the advisory verdict and entered judgment against Alderman on both claims. Alderman moved for a directed verdict and judg-

ment n.o.v. on the trade secret count; he appeals from the district judge's denial of those motions. We find no error in the district judge's actions. Alderman did not move for a new trial at the district court, and we conclude that, given the procedural posture of this case, we cannot now order a new trial on our own motion. We therefore affirm the judgment of the district court.

Robert J. Alderman is a self-trained inventor with an interest in radios and electronics. In the early 1970's, Alderman became interested in the possibility of applying the principle of controlled carrier circuitry to citizen's band radios such as "walkie-talkies." Controlled carrier circuits regulate the intensity of the carrier, or radio signal, transmitted by the radio. Alderman succeeded in developing a circuit that limits the radio's broadcast of unmodulated carrier during the time when no information is being impressed on the carrier signal. In practical terms, the circuit prolongs the life of the batteries in walkie-talkies by reducing the power used to broadcast unmodulated carrier.

On July 5, 1974, Alderman filed a patent application covering his controlled carrier circuit. The patent office granted his patent on November 15, 1977. During the intervening three years, Alderman contacted several corporations in an effort to market his invention. He received a response from Dr. Frank Roberts, product development manager at Radio Shack (a division of Tandy). Alderman contacted Roberts and subsequently met with him to demonstrate the circuit. Radio Shack was interested in the circuit and eventually developed product samples through a Japanese manufacturer. After obtaining approval of the circuit from the Federal Communications Commission (FCC), Radio Shack marketed the circuit as a part of its TRC–205 walkie-talkie.

The dispute between Radio Shack and Alderman centers on Radio Shack's use of the controlled carrier circuit without paying compensation to Alderman. Alderman contends that Radio Shack used the circuit in

the TRC–205 without his permission while negotiating as to the amount of compensation it would pay him. Radio Shack contends that Alderman did not and does not deserve compensation because the circuit was not novel or a new invention. Both parties introduced expert testimony at trial in support of their positions, and the jury found for Radio Shack.

I

Alderman contends that the district judge erred by failing to direct a verdict and by failing to enter judgment n.o.v. as to the trade secret claim. (Alderman does not challenge the judgment on the patent claim.) Under *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969) (en banc), we must determine whether "substantial evidence" supported Radio Shack's case such that a reasonable juror could vote against Alderman. *Id.* at 374. If so, we must affirm the decision of the district judge to deny Alderman's motions.

In *K & G Oil Tool Co. v. G & G Fishing Tool Service,* 117 U.S.P.Q. 54 (Tex.1958), the Supreme Court of Texas[1] stated the test for determining the existence of a trade secret:

A trade secret may be a device or process which is patentable; but it need not be that. It may be a device or process which is clearly anticipated in the prior art or one which is merely a mechanical improvement that a good mechanic can make. Novelty and invention are not requisite for a trade secret as they are for patentability.

*Id.* at 55. Nevertheless, as the court stated in *Cataphote Corp. v. Hudson,* 444 F.2d 1313 (5th Cir.1971), the secret "must possess at least that modicum of originality which will separate it from everyday knowledge . . . ."

▌ Alderman argues that the testimony at trial clearly supports his position that, although the *principle* of controlled carrier had been known for some time, the *improved circuit* that he developed constituted a trade secret. He contends that Radio

---

1. This is a diversity case in which Texas law supplies the rules of decision.

Shack introduced no substantial evidence tending to rebut this position. Radio Shack relies on the testimony of its expert, Nathan Sokul. At trial, Sokul stated that Alderman had simply used the principle of controlled carrier, which was common knowledge, to design a circuit constructed with modern transistors instead of vacuum tubes. He stated unequivocally that the substitution was obvious. This testimony constituted substantial evidence from which the jury could conclude that Alderman's circuit lacked the requisite "modicum of originality." Though Alderman introduced expert testimony tending to rebut Sokul's conclusion, we cannot hold that the rebuttal evidence entitled Alderman to a directed verdict or judgment n.o.v. Weighing the evidence is the function of the jury, not of this court.

## II

■ Even though we cannot conclude that the district court erred in denying Alderman's motions for a directed verdict and judgment n.o.v., we find this case troublesome. In its verdict, the jury found that Radio Shack had infringed Alderman's patent (the advisory portion of the verdict), but the jury also found that the evidence did not support Alderman's trade secret claim. The degree of novelty required to find a valid patent exceeds the degree of novelty necessary to find a trade secret. Thus, the jury's verdict is self-contradictory. We believe that the contradiction demonstrates a jury malfunction and afforded Alderman valid grounds to move for a new trial. Alderman did not make such a motion before the district court, however, and he did not request a new trial in his appeal. On our own motion, we requested briefs addressing the propriety of this court is nevertheless granting Alderman a new trial. After considering the problem, we conclude that it would be improper for us to do so.

In his supplemental brief, Alderman cites cases in which appellate courts have granted new trials under Federal Rule of Civil Procedure 50(d). In these situations, the appeals courts have determined as a matter of law that the appellant is entitled to judgment n.o.v. *See Slaughter v. Philadelphia Nat. Bank,* 417 F.2d 21 (3d Cir.1969); *Proctor & Gamble Defense Corp. v. Bean,* 146 F.2d 598 (5th Cir.1945). In such a case, it is proper for either a trial court or an appellate court to exercise its discretion and give the appellee another chance instead of ordering judgment to be entered for the appellant. When the trial court cannot conclude that judgment n.o.v. is warranted, however, it is improper for that court sua sponte to order a new trial. *Peterman v. Chicago, Rock Island & Pac. R. Co.,* 493 F.2d 88 (8th Cir.1974), *cert. denied,* 417 U.S. 947, 94 S.Ct. 3072, 41 L.Ed.2d 667 (1974); *Jackson v. Wilson Trucking Corp.,* 243 F.2d 212 (D.C.Cir.1957). We see no reason why this court should sua sponte grant a new trial when it would be improper for the district court to have done so.

In this case, Alderman clearly had an opportunity to move for a new trial, but he chose not to do so. He urges this court to grant judgment n.o.v. on the trade secret claim and order an entry of judgment in his favor of approximately $60,000, the amount of damages found by the jury on the patent claim.[2] Like Aesop's pup "who dropped his bone to grab one seen in reflection," *In re Southwestern Bell Tel. Co.,* 542 F.2d 297 (5th Cir.1976) (en banc) (Hill, J., dissenting), *rev'd,* 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977), Alderman decided to abandon his new trial claim for an unsuccessful claim for judgment n.o.v. He has lost his gamble.

We realize that the decisions in *Peterman* and *Jacobs* have been criticized. *See* 5A Moore's Federal Practice § 50.12; *Jackson v. Wilson Trucking Corp.,* 243 F.2d 212, 217–22 (D.C.Cir.1957) (Burger, J., dissent-

---

**2.** Even if we were to reverse the district court and order judgment n.o.v. for Alderman, we could not "tack" damages in this manner.

Damages for patent infringement are measured differently than damages for breach of a trade secret agreement.

ing).[3] Nevertheless, we find this situation to be an inappropriate one for us to order a new trial on our own motion. Alderman easily could have joined a motion for a new trial with his motion for judgment n.o.v. He chose not to do so. He cannot complain that some unexpected shift in events has made his decision unpalatable in retrospect. *Cf.* Fed.R.Civ.P. 50(d) (appeals court orders judgment n.o.v. for appellant; appellee can request new trial). Therefore, the judgment of the district court is

AFFIRMED.

---

**3.** Some of the criticisms of those cases do not apply here because in those cases the *district court* sua sponte granted a new ·trial.