**R & R PLASTICS, INC., Appellant,**

v.

**F.E. MYERS COMPANY et al., Appellees.**

[Cite as *R & R Plastics, Inc. v. F.E. Myers Co.* (1993), —— Ohio App.3d ——.]

Court of Appeals of Ohio,
Fulton County.

No. 93FU000001.

Decided Dec. 30, 1993.

790

*Thomas A. Meehan* and *Christina L. Brown,* for appellant.

*Dale Katzenmeyer* and *George W. Rooney, Jr.,* for appellees.

ABOOD, Judge.

This is an appeal from a judgment of the Fulton County Court of Common Pleas which granted summary judgment in favor of defendants-appellees, F.E. Myers Company, McNeil (Ohio) Corp., and Jack T. Bevington, and dismissed appellant's complaint and amended complaint for misappropriation of trade secrets. Appellant, R & R Plastics, Inc., has timely appealed setting forth six assignments of error:

"I. The trial court erred to the prejudice of plaintiff by analyzing plaintiff's trade secrets claims under requirements unique to federal patent law and not required by Ohio trade secrets law.

"II. The trial court erred to the prejudice of plaintiff in determining that the existence of a contract between the parties precluded the finding of a confidential relationship under Ohio law.

"III. The trial court erred to the prejudice of plaintiff by disregarding genuine issues of fact material to plaintiff's claims for tooling removal charges under the contract and by failing to correctly apply Ohio contracts law.

"IV. The trial court erred to the prejudice of plaintiff by dismissing Counts III and IV of plaintiff's amended complaint, when defendants' motion for summary judgment did not seek summary judgment as to Count IV and did not address the subject matter of Count III.

"V. The trial court erred to the prejudice of plaintiff by failing to allow plaintiff sufficient time for discovery before granting a motion for summary judgment.

"VI. The trial court erred to the prejudice of plaintiff by deciding that the torque testing fixture was designed by defendants and a third party, and in determining as a matter of law, based upon its own visual inspection, that plaintiff's diaphragm gating technique and plaintiff's modifications to the design of the ribs of defendants' suction bowl are not trade secrets."

The facts giving rise to this appeal are as follows. Appellant, R & R Plastics ("R & R"), is an Ohio corporation which manufactures custom plastic injection moldings, and designs and develops molds used in producing these plastic injection moldings, principally in Swanton, Ohio. Appellee F.E. Myers ("Myers") is an Ohio corporation which engages in the plastics business throughout the state of Ohio, principally in Ashland, Ohio. Appellee Jack T. Bevington is the water systems engineering manager of appellee Myers. Appellee McNeil (Ohio) Corporation is a parent corporation of Myers.

In November 1987, R & R entered into business negotiations and a contractual relationship with Myers, whereby R & R was to supply Myers with suction bowls

made from a customized plastic injection molding. A suction bowl is the component of a residential submersible waterwell pump that connects the pump to the motor and provides the inlet and coarse filtering of incoming water. In accordance with their contract, Myers provided R & R with a model suction bowl. R & R then modified and developed it to make a plastic mold and then produced the suction bowls for appellee from 1988 through 1991, when Myers began to self-manufacture the suction bowls. When Myers sought to obtain the reworked suction bowl mold from R & R, disputes arose as to the obligations of each party under the terms of the manufacturing contract. Appellees claimed that all payment obligations had been fulfilled and that the mold was their sole property, while appellant claimed that the appellees owed tool removal and engineering service charges for the premature termination of their business relationship.

On April 10, 1992, appellant filed a complaint in the Fulton County Court of Common Pleas that set forth six alleged "trade secrets" pertaining to the design and manufacture of the suction bowl mold and claimed that appellees, in violation of a confidential relationship, obtained and used these secrets to the detriment of appellant. The "trade secrets" that were alleged included (1) the "radial and vertical rib designs"; (2) the "torque test fixture and usage"; (3) the "drop test fixture and usage"; (4) the use of "short shots"; (5) the use of "top diaphragm gating"; and (6) the chemical composition of the resin used to manufacture the suction bowls. Appellant also alleged that the contract term which required appellees to pay a fifty percent engineering surcharge for any tool removal that occurred before appellees purchased a minimum specified quantity of suction bowls was never negotiated out of the contract and, therefore, appellant was entitled to payment of this surcharge because of appellees' premature request for possession of the suction bowl mold. Appellant alleged further that appellees had breached an implied agreement between the parties under which appellant would recoup engineering service and design charges through the sale of a specified minimum number of suction bowls to appellees.

On April 17, 1992, appellant filed a motion for preliminary injunction with supporting affidavits. A hearing on the motion was begun that same day and continued on May 19, 1992. In the interim, on May 11, 1992, appellees filed a joint answer and counterclaim. On June 15, 1992, the trial court filed its judgment entry denying appellant's motion for preliminary injunction.

On August 24, 1992, appellees collectively filed a motion for summary judgment and supporting memorandum. In support of their motion, appellees argued first that appellant's trade secret claims lacked merit because the design, manufacture and testing aspects of the suction bowl molds were subject to "reverse engineering," too common in the industry to be considered trade secrets, useless to appellees, and the product of their own research and development.

In support of this assertion, appellees relied on testimony given at the preliminary injunction hearings, including that of Milton Ellenwood, the general manager of R & R since July 1990. At that time Ellenwood testified, on cross-examination, that the resemblances between the suction bowl Myers currently manufactures and the R & R suction bowl were readily ascertainable through casual observation. In the area of product development, Ellenwood testified that the use of "short shots" *per se* is not a trade secret, that torque testing is not in itself a trade secret, that Myers provided the specifications on how to do drop tests, that appellant's set-up specifications were probably useless to appellees, since such specifications are necessarily tailored to a particular job, and that appellees had utilized a diaphragm gating technique with their original suction bowl prior to R & R's involvement.

The appellees also offered the testimony given at the preliminary injunction hearing by appellee Jack T. Bevington and James S. Pohovey, who was in charge of the plastic operations at Myers. Bevington testified that the torque testing fixture, in which appellant claims trade secret interest, was actually designed and first implemented by Myers and Endura Corporation. He stated that Al Channell of Myers talked with the president of R & R, Eugene Hanus, about setting up torque tests as a regular production procedure and specified the design loading for the torque test. Bevington also testified that appellee McNeil owned a suction bowl patent which disclosed the use of the diaphragm gate and, therefore, if the diaphragm gate is a trade secret, it is a trade secret of appellees, not appellant.

Pohovey testified that he worked on creating the molds to enable Myers to self-manufacture the suction bowl and that appellees were not aware of appellant's set-up specifications. Pohovey testified further that appellees could not have used appellant's set-up specifications and they would have been of no benefit to them, since the variables are dependent on the particular material and machine being used.

Appellee Myers argued next that it was entitled to summary judgment on appellant's contract claims because Clause 5 of the contract, which appellant relied on for the proposition that appellees were under a duty to pay appellant a fifty percent engineering surcharge for failure to continue to purchase suction bowls, was removed from the contract terms during negotiations and never became part of the contract.

On September 22, 1992, appellant filed its initial brief in opposition to appellees' motion for summary judgment and a motion for leave to file an amended complaint. Appellant argued that the court had not yet imposed any cut-off date for discovery and consideration of appellees' motion would be unfair, and that summary judgment should not be granted until the nonmoving party has had

sufficient time to discover essential material facts. Appellant also argued that appellees' "reverse engineering" defense and their design-aspect arguments were unsupported in Ohio trade secret law.

In support of its trade secret claims, appellant submitted the affidavit of Harold A. Stine, an engineer at R & R, who testified that, although the use of "short shots" is not *per se* a trade secret, the information yielded by the "short shots" was secret and provided a basis for important design changes. Stine also stated that the torque-testing fixture originated within appellant's company and the results of the torque testing led to important design changes. He stated further that some design changes as to the diaphragm gate location were based on the drop-test results and that the location was important to performance and was finalized by R & R only after its extensive testing. Stine also stated that in view of the fact that Myers was able to start production within fourteen weeks, as compared to the two years it took R & R to develop a suction bowl, appellant must have used R & R's set-up specifications.

In opposition to appellees' motion for summary judgment as to the contract claims, appellant attached the affidavit of former R & R president, Eugene Hanus, which stated that Clause 5, pertaining to the fifty percent engineering service charge, was never really deleted from the contract.

While the motion for summary judgment was pending, the court granted appellant leave to amend its complaint to include Count 4, an additional allegation that appellees violated a confidential relationship and misappropriated trade secrets with regard to a "laser-sealed" version of the suction bowl.

On October 19, 1992, appellees filed a reply to appellant's initial brief in opposition to the motion for summary judgment in which they argued that, from the clear and unambiguous language contained in the contractual documents, the mold is property of Myers and they are entitled to possession and use of the designs incorporated therein and parts produced therefrom.

On November 4, 1992, appellant filed its second brief in opposition to appellees' motion for summary judgment in which it argued that the contract between the parties contains no express language of conveyance or license and appellees are bound by the contract terms and, therefore, have no right to use appellant's design modifications.

On December 8, 1992, the trial court filed its opinion and judgment entry in which it granted appellees' motion for summary judgment and dismissed appellant's complaint and amended complaint with prejudice. In determining that appellees were entitled to judgment, the trial court found that appellant's assertion that it had "trade secrets" which had been appropriated failed because the design rework was readily ascertainable through casual observation, the use

of short shots is common in the plastics industry, the torque-test fixture was actually designed by appellees in cooperation with Endura Corporation, the drop-test concept originated with appellees and was used by appellees prior to appellant's involvement, appellant's set-up specifications were unique to their plant and useless to appellees, the top diaphragm gating is obvious from observation, and the chemical composition of the resin cannot be a trade secret because appellees supplied the resin to appellant.

The trial court also found that appellant's claim that a confidential relationship existed with appellees was not established by the terms of the contract. The trial court went on to hold that Clause 5, which would have required appellees to pay a fifty percent surcharge, had been specifically negotiated out of the contract by the parties. It is from this grant of summary judgment that appellant has brought this appeal.

## I

Preliminarily, this court notes that, in its appellate brief, appellant urges that this court consider the deposition of Eugene Hanus, which was not before the trial court but was filed for the first time in this court, in support of several assignments of error. It is well established that "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, paragraph one of the syllabus; see, also, *Midwest Fireworks Mfg. Co. v. Hennosy* (1991), 71 Ohio App.3d 490, 594 N.E.2d 725. Since the Hanus deposition was not before the trial court, this court *sua sponte* strikes from appellant's brief any reference to it.

## II

This court will consider first the fifth assignment of error, in which appellant asserts that the trial court committed prejudicial error by ruling on the summary judgment motion before it had sufficient time to complete its discovery depositions. Appellees respond that it is not the duty of the trial court to guarantee that a party has sufficient time for discovery; rather, the party needing additional time must request a continuance and appellant failed to do so.

Civ.R. 56(F) provides a remedy for the non-movant who has not had sufficient time to conduct discovery, as follows:

"(F) When Affidavits Are Unavailable. Should it appear from the affidavits of a party opposing the motion for summary judgment that he cannot for sufficient reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to

permit affidavits to be obtained or discovery to be had or may make such other order as is just."

The non-movant who is unable to obtain the evidence and information necessary to support its allegations or oppose summary judgment may seek a continuance pursuant to Civ.R. 56(F) in order to obtain the necessary discovery. See *Benjamin v. Deffet Rentals, Inc.* (1981), 66 Ohio St.2d 86, 92, 20 O.O.3d 71, 75, 419 N.E.2d 883, 887; *Paul v. Uniroyal Plastic Co.* (1988), 62 Ohio App.3d 277, 282, 575 N.E.2d 484, 487–488; *Gates Mills Invest. Co. v. Pepper Pike* (1978), 59 Ohio App.2d 155, 13 O.O.3d 191, 392 N.E.2d 1316. An appellant who fails to seek relief under Civ.R. 56(F) in the trial court does not preserve his rights under the rules for purposes of appeal. *Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App.3d 78, 87, 523 N.E.2d 902, 911.

Appellant's reliance on the Ohio Supreme Court decision of *Tucker v. Webb Corp.* (1983), 4 Ohio St.3d 121, 4 OBR 367, 447 N.E.2d 100, to support its assertion that the grant of summary judgment was premature is misplaced. In *Tucker*, the Supreme Court held that although appellant did not cite Civ.R. 56(F) specifically, he did in fact ask the trial court for more time for discovery in his initial brief in opposition to his opponent's motion for summary judgment.

In this case, appellant similarly stated in its initial brief in opposition to the motion for summary judgment that consideration of and a ruling on the motion at that time would deny it the chance to engage in the normal discovery process. Unlike *Tucker*, however, appellant also stated that the case was entering a phase where "meaningful deposition discovery can begin." In the time that followed appellant's initial brief in opposition, depositions of key employees of both appellant and appellees were taken, substantial discovery took place, additional briefs were filed by both parties, and appellant became well informed as to the pertinent issues it must address in order to avoid summary judgment. The only deposition that was not taken was that of Florida resident Eugene Hanus even though, as appellant acknowledged in its brief, this testimony was very important to support its interpretation of the contract terms.

Upon thorough review of the record of proceedings in the trial court, this court finds that appellant did not request a continuance to permit completion of discovery or submit affidavits asserting that it could not ascertain or present by affidavit facts essential to the defeat of appellees' motion. *Benjamin, supra.* This court finds further that appellant failed to avail itself of the protection afforded in Civ.R. 56(F) and, therefore, appellant is not entitled to raise this error on appeal. Accordingly, appellant's fifth assignment of error is found not well taken.

## III

This court will next address appellant's first, second and sixth assignments of error together, since the issues raised therein are interdependent. In these combined assignments of error, appellant alleges that (1) the trial court erred in analyzing the obviousness, utility and originality of the designs by applying the more rigorous standards of federal patent law in its determination of the protectability of appellant's trade secrets; (2) in finding that no confidential relationship existed between the parties, the trial court failed to consider usage of trade; and (3) genuine issues of material fact exist as to whether appellant's torque-testing fixture, diaphragm gate location and modification to the ribs on appellant's suction bowl constitute trade secrets.

Appellees respond that (1) the concepts of obviousness, utility and originality have application in Ohio trade secret analysis and, therefore, were properly considered by the trial court; (2) in Ohio there is no presumption of confidentiality and the facts of this case do not support the existence of a confidential relationship; and (3) the evidence presented by appellant in the face of the possible summary judgment fails to demonstrate that it possessed any trade secret interests.

In considering a motion for summary judgment made pursuant to Civ.R. 56, a reviewing court should render summary judgment if there remains no genuine issue as to any material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. See Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47–48. In response to a motion for summary judgment, the non-moving party may not rely on its pleadings but must produce evidence in a form permissible under Civ.R. 56(C), on any issue for which it bears the burden of production at trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–2554, 91 L.Ed.2d 265, 275; *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095.

This court will first consider what appellant would be required to prove in order to recover on its claim of misappropriation of trade secrets. Ohio courts have recognized two separate yet complimentary "trade secret" definitions. In *Kewanee Oil Co. v. Bicron Corp.* (1974), 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315, the United States Supreme Court reviewed Ohio trade secret law and adopted the definition of a "trade secret" found in IV Restatement of the Law, Torts (1939), Section 757, Comment (b), which provides, in part:

"[A] trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity

to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers."

In addition, many Ohio courts have cited the statutory definition of "trade secret" contained in R.C. 1333.51(A)(3) in analyzing trade secret misappropriation claims although the provision, by its terms, does not create a private cause of action. R.C. 1333.51(A)(3) states the following:

" 'Trade secret' means the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, or improvement, or any business plans, financial information, or listing of names, addresses, or telephone numbers, which has not been published or disseminated, or otherwise become a matter of general public knowledge. Such scientific or technical information, design, process, procedure, formula or improvement, or any business plans, financial information, or listing of names, addresses, or telephone numbers is presumed to be secret when the owner thereof takes measures designed to prevent it, in the ordinary course of business, from being available to persons other than those selected by the owner to have access thereto for limited purposes." See, *e.g., Valco Cincinnati, Inc. v. N & D Machining Serv., Inc.* (1986), 24 Ohio St.3d 41, 44, 24 OBR 83, 85, 492 N.E.2d 814, 817; *Water Mgt., Inc. v. Stayanchi* (1984), 15 Ohio St.3d 83, 85, 15 OBR 186, 187–188, 472 N.E.2d 715, 717–718.

In support of the argument that the trial court erroneously applied the federal patent law standards, appellant claims that Ohio trade secret law requires only that information be secret and that the concepts of novelty, uniqueness and originality have no application in trade secret analysis. In *Kewanee*, the United States Supreme Court stated:

"[N]ovelty, in the patent law sense, is not required for a trade secret." *Kewanee, supra*, 416 U.S. at 476, 94 S.Ct. at 1883, 40 L.Ed.2d at 322–323, citing *W.R. Grace & Co. v. Hargadine* (C.A.6, 1968), 392 F.2d 9, 14.

The court reasoned, however, that "some novelty will be required if merely because that which does not possess novelty is usually known; secrecy, in the context of trade secrets, thus implies minimal novelty." (Footnote omitted.) *Id.*, 416 U.S. at 476, 94 S.Ct. at 1883, 40 L.Ed.2d at 322–323; see, also, *Murray v. Bank One, Columbus, N.A.* (1990), 64 Ohio App.3d 784, 789, 582 N.E.2d 1124, 1127. Similarly, the uniqueness and novelty of the alleged trade secret has often been examined by Ohio courts in analyzing misappropriation claims. See *Valco Cincinnati, supra*, 24 Ohio St.3d at 46, 24 OBR at 86–87, 492 N.E.2d at 818–819; *Stayanchi, supra*, 15 Ohio St.3d at 86, 15 OBR at 188, 472 N.E.2d at 718.

*Weibold Studio, Inc. v. Old World Restorations, Inc.* (1985), 19 Ohio App.3d 246, 248, 19 OBR 398, 400–401, 484 N.E.2d 280, 284–285. The United States Supreme Court has held that there is no trade secret interest in a design that can be viewed through casual observation of the finished product. *Sears, Roebuck & Co. v. Stiffel Co.* (1964), 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661. Additionally, duplication of design features through "reverse engineering" in the absence of a confidential relationship will not support a trade secret misappropriation claim. *Bonito Boats v. Thunder Craft Boats* (1989), 489 U.S. 141, 109 S.Ct. 971, 103 L.Ed.2d 118. The Eleventh Circuit, in a well-reasoned opinion consistent with the above-mentioned cases, stated that a design dictated by its application is utilitarian in nature and, therefore, cannot rise to the level of a trade secret. *Alderman v. Tandy Corp.* (C.A.11, 1983), 720 F.2d 1234.

■ Upon consideration of the foregoing, this court finds that the concepts of novelty, uniqueness, and obviousness may be considered by Ohio courts in analyzing whether information is worthy of trade secret status, since these concepts reflect the level of secrecy and thus protectability of the information. The trial court, therefore, did not err in looking for some extent of novelty, uniqueness or nonobviousness when analyzing appellant's claims and appellant's first assignment of error is found not well taken.

■ This court will next consider appellant's arguments as to the specifically alleged trade secrets. Factors to be considered in examining the evidence to determine whether appellant's manufacturing processes, suction bowl designs and information are protectable trade secrets include:

"(1) the extent to which the information is known outside the business, (2) the extent to which it is known to those inside the business, *i.e.,* by the employees, (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information, (4) the savings effected and the value to the holder in having the information as against competitors, (5) the amount of effort or money expended in obtaining and developing the information, and (6) the amount of time and expense it would take for others to acquire and duplicate the information." *Pyromatics v. Petruziello* (1983), 7 Ohio App.3d 131, 134–135, 7 OBR 165, 168–170, 454 N.E.2d 588, 592.

The Ohio Supreme Court, in recognizing the factors enumerated in *Pyromatics,* focused on "the extent to which information is known outside the business and the precautions taken to guard against the secrecy of the information" in determining trade secret status. *Stayanchi, supra,* 15 Ohio St.3d at 86, 15 OBR at 188, 472 N.E.2d at 718; see, also, *Valco Cincinnati, supra,* 24 Ohio St.3d at 46–47, 24 OBR at 86–88, 492 N.E.2d at 818–819. Information that is known generally in the industry is not "secret" and cannot be afforded trade secret

protection. See *Weibold Studio, Inc., supra,* 19 Ohio App.3d at 246, 19 OBR at 398–399, 484 N.E.2d at 283; *B.F. Goodrich Co. v. Wohlgemuth* (1963), 117 Ohio App. 493, 24 O.O.2d 290, 192 N.E.2d 99.

In *Stayanchi,* the Ohio Supreme Court held that there is no presumption that any particular idea imparted to or acquired by an employee is a trade secret unless the possessor takes active steps to maintain the secrecy. *Stayanchi, supra,* 15 Ohio St.3d at 85, 15 OBR at 187–188, 472 N.E.2d at 717–718. Similarly, in *Valco Cincinnati,* the Ohio Supreme Court stated that "a trade secret cannot be acknowledged as such unless the manufacturer has initiated measures designed to ensure the security of those things considered trade secrets." *Valco Cincinnati, supra,* 24 Ohio St.3d at 46–47, 24 OBR at 86–88, 492 N.E.2d at 819. In analyzing whether information is disclosed within a confidential relationship, Ohio courts have generally considered the facts of each case, looking for an agreement or understanding of confidentiality. See *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172, 174–175; *Valco Cincinnati, supra,* 24 Ohio St.3d at 46–47, 24 OBR at 86–88, 492 N.E.2d at 818–819; *Stayanchi, supra,* 15 Ohio St.3d at 85, 24 OBR at 187–188, 492 N.E.2d at 819.

In considering a trade secret claim, the Southern District of Ohio held that under R.C. 1333.51, the holder of a trade secret is protected against disclosure or unauthorized use of the trade secrets by those to whom it has been confided on the condition that the secret not be disclosed. *Boggild v. Kenner Products, Div. of Gen. Mills Fund Group, Inc.* (S.D.Ohio 1983), 576 F.Supp. 533, reversed on other grounds (C.A.6, 1986), 776 F.2d 1315. Moreover, an owner's disclosure to potential or actual customers, absent a confidential agreement or understanding, will destroy any protection of that information as a trade secret. See, *e.g., Am. Nursing Care of Toledo, Inc. v. Leisure* (N.D.Ohio 1984), 609 F.Supp. 419, 432.

In support of its proposition that a confidential relationship existed, appellant submitted the affidavit of Milton G. Ellenwood. Ellenwood stated, in his affidavit in support of appellant's motion for preliminary injunction, that Myers was given access to valuable information which he considered confidential and proprietary. The affidavit also stated, however, that because the specifications on the suction bowl that Myers first brought to appellant had to be reworked, "it proved to be necessary for employees of appellant and employees of F.E. Myers, including appellant Jack T. Bevington, to collaborate and work closely together in developing revised suction bowl specifications and revised molds and tooling for manufacturing such suction bowls." The record also includes a later deposition, in which Ellenwood was asked, by appellees, about the existence of confidential agreements and stated the following:

"Q. You indicated that from time to time you have other visitors who go to different areas within your facility?

"A. Correct.

"Q. Have you had written confidentiality or secrecy agreements with those individuals?

"A. We have not. We do escort them into and through the plant, vendors, customers, potential customers. They're all guided to the area where they're going, QC, engineering or what have you."

Ellenwood also indicated that R & R Plastics gives tours of the facilities to high school students who are not told of the confidential nature of the manufacturing processes and are not asked to sign written confidential agreements. Ellenwood effectively explained that no confidentiality agreement was executed by the parties.

Upon consideration of the foregoing, this court finds that appellant presented no evidence to support its assertion that an agreement or understanding of confidentiality, expressed or implied, ever existed between the parties.

■■■ This court will next analyze the precautions taken by appellant to guard the secrecy of the alleged trade secrets. *Stayanchi, supra.* Appellant relies on *CPG Products Corp. v. Mego Corp.* (S.D.Ohio 1981), 214 U.S.P.Q. 206, 1981 WL 59413, to support its proposition that the "secrecy" requirement is not absolute; rather, courts should look to whether the owner has taken "reasonable measures" to protect its trade secret. Appellant asserts that it took security measures to protect its trade secrets, including restricting access of visitors to its facilities and escorting authorized visitors to their place of business within the facility. In support of its claim that reasonable measures were taken to guard secrets, appellant submitted the deposition testimony of Milton Ellenwood, who stated as follows:

"Q. Do you have at R & R Plastics some sort of visitor register which would indicate who was present on any particular date?

"A. There is not a formal record kept. Probably the easiest way to identify that is through old expense accounts because almost always when Jack or Al or the F.E. Myers people would come to our plant we'd go to lunch so the expense account record would indicate that.

"Q. But when people visit your plant they're not required to sign in so you have no record of who was there on any given day?

"A. We do not allow people to wander through our plant. They are required to come to the front door and are escorted to the appropriate department by the

person that needs their services. There is [*sic*] exceptions to that, namely our electrician and plumber who have done extensive work for us over the years."

Appellant also cites the deposition of Jack T. Bevington, a Myers' employee, in support of its proposition that R & R Plastics conducts its operations in a closed factory. An examination of that testimony, however, reveals that Bevington was given free access within the plant to information such as set-up specifications. Bevington testified as follows:

"Q. How about any of the other technical personnel of F.E. Myers? Do you happen to know if they were permitted to observe the same setup specifications?

"A. I am sure they were permitted, because we were given free rein to walk around. And those gauges are out in the open. Whether they noticed these gauges or not, I don't know.

"Q. Okay. You say the gauges were 'out in the open.' They were out in the open in an enclosed factory, I take it?

"A. Well, yes. I mean, there was a roof over the factory, and there were doors. .

"Q. And walls around it?

"A. Yes."

In *Valco Cincinnati, supra,* 24 Ohio St.3d at 47, 24 OBR at 88, 492 N.E.2d at 819, the Ohio Supreme Court found that plaintiff had taken "active steps" designed to ensure the security of those things considered trade secrets. The record showed that a receptionist screened all visitors, admittance was gained through a buzzer lock system, neither the general public nor competitors were taken through the plant, and that all drawings supplied to outsiders for business purposes had a propriety marking restricting the use and disclosure thereof. *Id.* Similarly, in *Pyromatics,* denial of plant access to all non-employees, even customers, was deemed a significant factor. *Pyromatics, supra,* 7 Ohio App.3d at 135, 7 OBR at 170, 454 N.E.2d at 592–593. From an examination of the above facts, it is apparent that the "reasonable" security measures taken in comparable cases far exceed those taken by appellant in this case.

Upon consideration of the foregoing, this court finds that appellant has submitted no evidence of effective security measures taken to guard its alleged trade secrets. See, *e.g., Valco Cincinnati* and *Pyromatics, supra.*

In accordance with the above findings, this court finds further that, as to the existence of an express or implied agreement of confidentiality between the parties or the existence of security measures taken to guard trade secrets, appellant has not submitted evidence that is sufficient to raise a genuine issue of fact and, when construing the evidence most strongly in favor of appellant,

reasonable minds can only conclude that on those issues appellees are entitled to judgment as a matter of law. Accordingly, appellant's second assignment of error is found not well taken.

In appellant's sixth assignment of error, it alleges that genuine issues of material fact exist as to whether the torque-testing fixture, diaphragm gating technique and modifications to the design of the ribs on the suction bowls are trade secrets. Upon consideration of all the evidence that was before the trial court and our findings as to Assignments of Error I and II, this court finds appellant's sixth assignment of error not well taken.

## IV

In its third assignment of error, appellant claims that the trial court misapplied Ohio contract law and erred in finding that the tool removal clause was deleted from the contract. Specifically, appellant asserts that Clause 5 of the parties' original purchase order obligates appellees to pay a fifty percent engineering charge for its tool removal prior to their fulfillment of the minimum purchase requirement under the clause. Appellees respond that the negotiations which took place between the parties clearly show an intent to delete Clause 5 from this agreement.

Consideration of this assignment of error necessitates a review of the chronology of the negotiations between the parties. On October 28, 1987, appellant submitted its original quotation for the manufacture of the suction bowl mold which, under Clause 5, contained the following language:

"5. Upon payment in full, therefore, tools become the property of the customer but may not be removed from possession of manufacturer until an additional engineering charge of 50% of the original tool charge is paid by customer, unless the invoiced price of parts (exclusive of raw material) produced therefrom equals at least ten times the price of said tools as billed."

On November 9, 1987, appellees issued purchase order No. 90141 for the mold. Paragraph 6 of this purchase order contained terms of possession which conflicted with Clause 5 of the original quotation, as follows:

"Myers reserve [sic] the right to pull the tool from R & R without any cost penalty or surcharges should conditions ever warrant such action."

In support of this motion for summary judgment, appellees submitted the affidavit of appellant Bevington which, in part, describes the content of a telephone conversation of November 10, 1987, in which Bevington and Eugene Hanus discussed the "tool removal" charges:

" * * * Mr. Hanus agreed to waive the requirements of Clause # 5. In other words, he agreed on behalf of R & R Plastics that F.E. Myers Company could obtain possession of the mold without having to pay the additional fifty percent (50%) engineering charge and without having to purchase a minimum number of suction bowls from R & R Plastics, Inc., as described in Clause # 5. Mr. Hanus insisted, however, that if R & R Plastics had ordered any material in order to fill any F.E. Myers Company order for suction bowls, F.E. Myers would have to fulfill any contractual obligation with regard to such ordered material. Such ordered material could be in the form of raw material or finished goods in inventory."

On the same day of the phone conversation between Bevington and Hanus, Hanus wrote Bevington a letter which referred to appellees' objection to Clause 5 as follows:

"6. *Tool removal*

"I can understand the objection by F.E. Myers of Clause # 5 on our standard terms and conditions. The production tooling on your purchase order is the property of F.E. Myers and can be removed from R & R Plastics as long as the contractural [*sic*] objections are met."

In response to the Hanus letter, appellant Myers issued an amendment to purchase order 90141 on or around November 13, 1987. Paragraph 6 of the purchase order amendment provided:

"6. Tool removal: It is agreed that Myers will fulfill any contractural [*sic*] agreement with regard to mat'l ordered by R & R to fulfill Myers' orders. Myers will not honor or consider any charges for removal of the tool from R & R after the final tool payment has been made."

While appellant urges this court to interpret references made in the negotiations to "contractual obligation" as meaning that the minimum purchase requirements and the fifty percent tool removal charge were never removed from the contract, it has failed to submit any evidence to support this assertion.

Upon consideration of all the evidence that was before the court on this issue, this court finds that appellant has failed to submit evidence that is sufficient to raise a genuine issue of fact and, when construing the evidence most strongly in favor of appellant, reasonable minds can only conclude that Clause 5 was negotiated out of the contract by the parties. Accordingly, appellant's third assignment of error is found not well taken.

V

Appellant asserts in its fourth assignment of error that the trial court committed prejudicial error by dismissing Count 3, which dealt with claims in *quantum*

*meruit* and implied contract, and Count 4 of appellant's amended complaint, which alleged a trade secret interest in appellant's "unthreaded" or "laser-sealed" version of the suction bowl. In this assignment of error, appellant argues that appellees did not seek summary judgment as to Count 4 and did not address the subject matter of Count 3, in its motion for summary judgment. As to Count 3, appellees respond that both Counts 2 and 3 seek relief for profits lost by appellant because appellees failed to purchase the minimum quantity of suction bowls from appellant and, therefore, once the trial court determined that the express terms addressing the minimum purchase requirement were negotiated out of the contract, it necessarily concluded that the implied contract claim must likewise fail. As to Count 4, appellees respond that appellant alleged the very same trade secret interest in the "laser-sealed" version of the suction bowl as was originally alleged, and once the trial court correctly concluded that the alleged trade secrets were in fact not trade secrets, Count 4 also failed.

 Appellant seems to be arguing under this assignment of error that appellees, as movants for summary judgment, failed to "make and support" their motion as required by Civ.R. 56(C) in that they "failed entirely to show undisputed facts entitling them to summary judgment as a matter of law" on these counts. The party seeking summary judgment must specifically delineate the basis for which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 113, 526 N.E.2d 798, 799–800. The law is clear, however, that the moving party need not support its motion for summary judgment with evidence negating his opponent's claim, but may simply point out that there is an absence of evidence to support the non-moving party's claim. *Celotex, supra,* 477 U.S. at 325, 106 S.Ct. at 2553–2554, 91 L.Ed.2d at 275. Once a motion for summary judgment is made and supported as provided by Civ.R. 56(C), an adverse party cannot rely on the mere allegations or denials of his pleadings, but must set forth, by his own affidavits or other acceptable form of evidence as provided for in the rule, specific facts showing that there is an issue for trial. Civ.R. 56(E).

 In their original motion for summary judgment, appellees detailed the negotiations with appellant, and alleged that the clause requiring appellees to pay a fifty percent engineering charge for tool removal, unless removal occurs after a minimum amount of suction bowls are purchased, was negotiated out of the contract. Count 3 addressed damages resulting from implied contract, in that appellant expected to recoup the reasonable value of development services through the sale of suction bowls to Myers, relying on the custom and standards of the plastic industry. Appellees, by raising the issue that the clause containing the minimum purchase requirements was negotiated from the contract, put appellant on notice that it must respond to all the contract claims, including the

implied claims, that Myers was obligated to purchase all the suction bowls it required from appellant.

Under Ohio law, there can be no implied promises in a contract as to any matter that is specifically covered by the written terms of the contract. See *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53–54, 544 N.E.2d 920, 922–924; *Kachelmacher v. Laird* (1915), 92 Ohio St. 324, 110 N.E. 933, paragraph one of the syllabus; *Constr. Interior Sys., Inc. v. Marriott Family Restaurants, Inc.* (C.A.6, 1993), 984 F.2d 749, 754. Appellant submitted no evidence to support its claims in Count 3 as to implied obligations of appellee to purchase all they require from appellant.

As to appellant's argument that Count 4 was never addressed by appellees, footnote 1 of appellees' response to appellant's second brief in opposition to appellees' motion for summary judgment, which was filed following appellant's amended complaint adding Count 4, states the following:

"[Appellant's] original Complaint alleged that [appellees'] threaded suction bowl incorporated and, therefore, infringed upon [appellant's] trade secrets. [Appellant's] Complaint was subsequently amended to include the laser-sealed version of the suction bowl, however, the trade secrets allegedly infringed by [appellees] are the same as between both versions of the suction bowl."

Appellees did in fact address Count 4 in that this footnote contended that the very same alleged trade secrets applied to both versions of the suction bowl. Moreover, where an amendment to the complaint does not affect the issues raised in the motion for summary judgment, there is no affirmative duty upon the moving party to renew its motion for summary judgment. *Singer v. Fairborn* (1991), 73 Ohio App.3d 809, 813, 598 N.E.2d 806, 809.

Upon consideration of the foregoing and our finding as to Assignment of Error II, this court finds that appellant's fourth assignment of error is not well taken.

Upon consideration whereof, this court finds that substantial justice has been done the party complaining, and the judgment of the Fulton County Court of Common Pleas granting summary judgment in favor of appellees is affirmed. This court finds further that there are reasonable grounds for this appeal. Court costs only are assessed against appellant.

*Judgment affirmed.*

GLASSER, P.J., and HANDWORK, J., concur.