**[Cite as *Cincinnati Enquirer v. Hamilton Cty. Bd. of Commrs.*, 2020-Ohio-4856.]**

| | |
|---|---|
| THE CINCINNATI ENQUIRER, A DIVISION OF GANNETT GP MEDIA, INC. | Case No. 2019-00789PQ |
| Requester | Special Master Jeff Clark |
| | <u>REPORT AND RECOMMENDATION</u> |
| v. | |
| HAMILTON COUNTY BOARD OF COMMISSIONERS | |
| Respondent | |

### The Ohio Public Records Act (PRA)

{¶1} "Public records are one portal through which the people observe their government, ensuring its accountability, integrity, and equity while minimizing sovereign mischief and malfeasance." *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 16. "[T]he inherent, fundamental policy of R.C. 149.43 is to promote open government, not restrict it." *State ex. rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 398, 732 N.E.2d 373 (2000) ("*Besser II*"). Public records inform the significant public interest in the use of their tax money and other public funds. *State ex rel. Toledo Blade Co. v. Univ. of Toledo Foundation*, 65 Ohio St.3d 258, 261-263, 602 N.E.2d 1159 (1992). Therefore, R.C. 149.43 must be construed liberally in favor of broad access, with any doubt resolved in favor of disclosure of public records. *State ex rel. Hogan Lovells U.S., L.L.P. v. Dept. of Rehab. & Corr.*, 156 Ohio St.3d 56, 2018-Ohio-5133, 123 N.E.3d 928, ¶ 12; *Besser II* at 405.

### Request for Communications of Public Officials Regarding Specific Agreements, Including Real Estate Purchases and Leases

{¶2} On November 20, 2018, Sharon Coolidge, a reporter for requester Cincinnati Enquirer, made a public records request to the administrator for respondent Hamilton County Board of Commissioners (the Board), as follows:

Pursuant to the Ohio Open Records Act (Ohio Rev. Code Ann. Sec. 149.43 to 149.44), I am writing to request emails related to the new Bengals agreement that involves the concert venue and purchasing Hilltop Concrete.

Specifically, I am writing to request copies of the following emails:

Date Range: October 1, 2018 — November 20, 2018

Subject: The CSO Concert Venue at the Banks; and/or Paul Brown Stadium; and/or Hilltop Concrete or any subsidiary thereof

Sender: Jeff Alutto and/or Todd Portune, Chris Monzel, Denise Driehaus, John Bruggen, Judi Boyko, Tom Gabelman

Recipient: Jeff Alutto and/or Todd Portune, Chris Monzel, Denise Driehaus, John Bruggen, Judi Boyko, Tom Gabelman

(Complaint at 3.) Over three months passed. On March 6, 2019, the Board denied the request in its entirety: "After reviewing our files, the only records we located specific to your request are covered by attorney-client privilege and are therefore not subject to release under the Ohio Public Records Act." (*Id.* at 9.) After additional correspondence, the Board provided the Enquirer with 275 pages of heavily redacted records, with only email headers visible. The substantive content of each email, letter, press release and other communication was obscured. (*Id.*, Exhibit D.)

{¶3} On July 11, 2019, the Enquirer filed a complaint pursuant to R.C. 2743.75 alleging denial of access to public records in violation of R.C. 149.43(B). Following unsuccessful mediation, the Board filed a combined response and motion to dismiss (Response) on September 25, 2019. On October 9, 2019, the Board filed an unredacted copy of the withheld records, under seal. On November 20, 2019, the Enquirer filed a response to the motion to dismiss (Reply). On January 27, 2020, the Board filed a privilege log regarding exemptions claimed for the withheld records. On April 8, 2020, the Board filed a descriptive list of correspondents to the withheld emails. On April 28, 2020, the Enquirer filed a further response.

**Motion to Dismiss**

{¶4} In order to dismiss a complaint for failure to state a claim upon which relief can be granted, it must appear beyond doubt that the claimant can prove no set of facts warranting relief after all factual allegations of the complaint are presumed true and all reasonable inferences are made in claimant's favor. *State ex rel. Findlay Publishing Co. v. Schroeder*, 76 Ohio St.3d 580, 581, 669 N.E.2d 835 (1996). As long as there is a set of facts consistent with the complaint that would allow the claimant to recover, dismissal for failure to state a claim is not proper. *State ex rel. V.K.B. v. Smith*, 138 Ohio St.3d 84, 2013-Ohio-5477, 3 N.E.3d 1184, ¶ 10. The unsupported conclusions of a complaint are, however, not admitted and are insufficient to withstand a motion to dismiss. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 193, 532 N.E.2d 753 (1988).

## A.  Failure to Provide Records Promptly

{¶5} "The primary duty of a public office when it has received a public-records request is to promptly provide any responsive records within a reasonable amount of time and when a records request is denied, to inform the requester of that denial and provide the reasons for that denial. R.C. 149.43(B)(1) and (3)." *State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 11. Timeliness is important because "[*w*]hen records are available for public inspection and copying is often as important as *what* records are available." (Emphasis sic.) (Citations omitted.) *State ex rel. Consumer News Servs. v. Worthington City Bd. of Educ.*, 97 Ohio St.3d 58, 2002-Ohio-5311, 776 N.E.2d 82, ¶ 34. This is often significant for media reporters. *Id.* at ¶ 45. Whether a public office has complied with its duty to respond within a "reasonable period of time" is evaluated based on the pertinent facts and circumstances of each case. *State ex rel. Kesterson v. Kent State Univ.*, 156 Ohio St.3d 22, 2018-Ohio-5110, 123 N.E.3d 895, ¶ 19-20, 26-27. The requester bears the burden of demonstrating that the public office's response was unreasonably delayed. *Cordell* at 12.

{¶6} The Board asks the court to dismiss the claim that it violated the requirement of R.C. 149.43(B)(1) to provide copies of public records "within a

reasonable period of time." However, the Board admits that it did not respond to the request from November 20, 2018 until March 5, 2019. (Response at 3; Complaint, Greiner Aff. – Exh. B.) The only explanation offered is: "The Respondent misplaced the request and completely forgot that it was made." (Response at 12.) This statement amounts to an admission of negligence rather than support for a legal defense. I find that the absence of any response for three and a half months, without justification, constituted a violation of the timely response requirement in R.C. 149.43(B)(1). *Cordell* at ¶ 13-14; *State ex rel. DiFranco v. S. Euclid*, 138 Ohio St.3d 367, 2014-Ohio-538, 7 N.E.3d 1136, ¶ 20-21 (two months without any response constituted unreasonable delay). Moreover, the Board's initial delay had the follow-on effect of delaying the later partial production of redacted records (on May 17, 2019) far beyond a reasonable period of time. (Response at 3-4.) This constituted a further violation of both R.C. 149.43(B)(1) and (B)(7).

{¶7} Public offices are required to organize their offices and employ their staff in such a way as to be able to make records available when requested. R.C. 149.43(B)(2);[1] *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 120 Ohio St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961, ¶ 36; *State ex rel. Beacon Journal Pub. Co. v. Andrews*, 48 Ohio St.2d 283, 289, 2 Ohio Op.3d 434, 358 N.E.2d 565 (1976). The statutory requirement of organization implies capable administrative management of receipt, logging, processing, and response for public records requests. The Board cites no case precedent accepting inadvertence or neglect is a valid defense to an untimely response. The Supreme Court routinely rejects similar excuses for delay such as scarce resources, expense, time involved, or interference with other duties. *State ex rel. Wadd v. Cleveland*, 81 Ohio St.3d 50, 53-54, 689 N.E.2d 25 (1998); *Toledo Blade v. Seneca Cty. Bd. of Commrs.* at ¶ *36; Beacon Journal v. Andrews* at 289. In *State ex rel.*

---

[1] "To facilitate broader access to public records, a public office or the person responsible for public records shall organize and maintain public records in a manner that they can be made available for inspection or copying in accordance with division (B) of this section." R.C. 149.43(B)(2).

*Hogan Lovells U.S., L.L.P. v. Dept. of Rehab. & Corr.*, 156 Ohio St.3d 56, 2018-Ohio-5133, 123 N.E.3d 928, the respondent alleged "that its failure to respond in a timely manner to the request was inadvertent and unintentional." *Id.* at ¶ 31. The Supreme Court declined to allow "inadvertence" to excuse respondent's violation of its obligation to timely respond. *Id.* at ¶ 31-33, 43-45. I find that the Board's delay of more than three months in making any response to the written request was not excused by its own misplacement and forgetfulness.

{¶8} The Board further argues as mitigation that when the Enquirer challenged its lengthy initial delay on February 28, 2020, it quickly reviewed the records and advised that the entire request was denied. However, this demonstrated ability to evaluate and deliver a response in six days only undermines the Board's assertion that three months was a reasonable period of time to respond. *See Wadd* at 53 (City's concession of its capabilities undermined the assertion that records were provided timely). Finally, the record evidences that the Board chose, at that time, to redact essentially all content other than header information from the communications – a minimally time-consuming task. Based on these facts and circumstances, I find that the Board failed to provide the requested records, or to inform Coolidge of denial, within a reasonable period of time after the request was made.

### B. Drafts are Records

The Board states that the requested emails "contained draft documents exempt from disclosure." (Response at 7-9.) However, *all* documents that a public office uses to document its activities are "records" of the office, even if in preliminary or draft form. *See, e.g., Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 20; *State ex rel. Calvary v. Upper Arlington*, 89 Ohio St.3d 229, 232, 729 N.E.2d 1182 (2000); *State ex rel. Post v. Schweikert*, 38 Ohio St.3d 170, 172-173, 527 N.E.2d 1230 (1988). Specifically, there is no exemption or defense as "non-record" for draft proposals exchanged in the process of negotiating a contract. *State ex rel. Cincinnati*

*Enquirer v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 12-14, 18-21 (settlement proposal). The Board provides no authority to the contrary, arguing only that it would prefer not to disclose records of its negotiations. The Supreme Court has rejected withholding of public records based solely on a public office's policy preference. *State ex rel. Consumer News Serv., Inc. v. Worthington City Bd. of Edn.*, 97 Ohio St.3d 58, 2002 Ohio 5311, P54, 776 N.E.2d 82 at ¶ 21. *Accord State ex rel. WBNS TV, Inc. v. Dues*, 101 Ohio St.3d 406, 2004-Ohio-1497, 805 N.E.2d 1116, ¶ 37. The Board's responsive draft documents are thus records that must be produced, except to the extent that any portion of a draft is subject to a public record exemption.

{¶9} The Board alleges that some drafts have been "discarded or replaced." By statute, public offices are only required to retain records that are necessary to document the activities of the office. R.C. 149.40. Thus, any drafts that the Board properly disposed of prior to Coolidge's request need not be produced. *State ex rel. Glasgow v. Jones,* 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 24, fn. 1. However, this defense is not available for any drafts that were disposed of improperly, e.g., after Coolidge's request was received. *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.,* 120 Ohio St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961. I find the Board has not provided any evidence, or even asserted, that it properly disposed of any responsive drafts that existed at the time of the Enquirer's request.

{¶10} I recommend that the court deny the Board's motion to dismiss the claim for production of draft documents kept by the Board at the time of the request.

**C. Scope of Requests**

{¶11} The Board pleads that it was confused prior to litigation as to whether the Enquirer had agreed to accept documents with all content other than headers redacted, rather than agreeing only to redaction of specific content for which a valid public records exemption was claimed. (Response at 4-5.) The Enquirer attests that it had accepted no such limitation on its request. (Reply, Greiner Aff. at ¶ 6, 8-9.)

{¶12} The Board stops short of claiming that the documentary response based on this alleged misunderstanding renders the claim for production moot, and to the extent that the Board appears to offer the misunderstanding as grounds for dismissal I recommend that the court deny the motion.

**D. Assertion of Improperly Ambiguous Request**

{¶13} The Board states that Coolidge's request for topical email involving senders Jeff Alutto, "and/or" six other names; and recipients Jeff Alutto, "and/or" the same six names,

> is vague and ambiguous as to what is meant by sender and recipient. It is unclear whether the request is for emails only between those individuals, or for any emails sent by any one of those individuals, or for any emails received by any one of those individuals. * * * To the extent that the emails are not between the exact list of senders and recipients, the emails are out of scope of the request and are not required to be produced.

(Response at 11-12.) However, a requester need only make a request such that the public office can reasonably identify what public records are being requested. R.C. 149.43(B)(2). Perfection is not required in a public records request, "particularly where, as here, it is evident that the public office was aware of the specific records requested." *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 37. Applying common grammar to the request, Coolidge gave the Board a list of correspondents from among whom she sought email, on a specific subject, over a short period of time. *See State ex rel. Kesterson v. Kent State Univ.*, 156 Ohio St.3d 22, 2018-Ohio-5110, 123 N.E.3d 895, ¶ 26. The Board's alternate readings – that she might be seeking only email with no "extraneous" correspondents, or only those where one of the list was a solo sender or recipient – are not justified by the request's wording, context, or any other indication that Coolidge was not seeking all topical emails involving those on the list.

{¶14} Further, if the Board had found this aspect of the request vague and ambiguous, it was under a mandatory duty to offer Coolidge an opportunity to revise the

request, after explaining to her how the Board organized and accessed its email records. R.C. 149.43(B)(2). The Board did not advise Coolidge prior to litigation that it found the request vague or ambiguous, or invite revision of the request, and later filed records with the court that included additional correspondents, recognizing that these were potentially responsive to the request. (Respondent's Sept. 19, 2019 Motion for Extension of Time to Provide Court Ordered Documents at 3.)

{¶15} I recommend the court deny the motion to dismiss on the grounds that any of the records submitted under seal were not within the scope of the request.

### E. Assertion of Attorney-Client Communication Privilege, Attorney Work Product, and Trade Secret Exceptions

{¶16} The remainder of the Board's response asserts public records exceptions based on the attorney-client privilege, attorney work product, and trade secret information. On review, the complaint neither concedes nor demonstrates that the requested documents are subject to these exceptions. Therefore, to the extent the Board intends to assert these as a motion to dismiss, I recommend that the court deny the motion as to these defenses, and determine the claim on the merits.

### Burdens of Proof

{¶17} In an action to enforce Ohio's Public Records Act (PRA), the burden is on the requester to prove an alleged violation. In mandamus enforcement actions,

> [a]lthough the PRA is accorded liberal construction in favor of access to public records, "the relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence."

*State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 428, 2016-Ohio-8394, 89 N.E.3d 598, ¶ 15. Entitlement to relief under R.C. 2743.75 must likewise be established by clear and convincing evidence. *Hurt v. Liberty Twp.*, 2017-Ohio-7820, 97 N.E.3d 1153 ¶ 27-30 (5th Dist.).

{¶18} However, when a public office asserts any exception to the release of records under the Act, the burden of proving the exception rests on the public office.

*State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office*, 153 Ohio St.3d 63, 2017-Ohio-8988, 101 N.E.3d 396, ¶ 15. Exceptions to disclosure must be strictly construed against the public-records custodian. *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, ¶ 7. A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception. *Id.*; *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus. Any doubt should be resolved in favor of disclosure. *State ex rel. James v. Ohio State Univ.*, 70 Ohio St.3d 168, 169, 637 N.E.2d 911 (1994).

### Exceptions Abandoned Where Not Asserted

{¶19} The Board makes general assertions that the contents of the withheld records were exempt entirely or in part as attorney-client privileged communication, attorney work product, and/or trade secret information. The special master ordered the Board to file a privilege log detailing the portions of each withheld record to which it asserts each exception applies. To the extent the Board's privilege log limits application of an exception to specific pages, paragraphs, or information in the withheld records, that exception is no longer asserted against disclosure of the remainder of the withheld content. *State ex rel. Toledo Blade Co. v. Toledo-Lucas County Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 19; *State ex rel. Plain Dealer v. Ohio Dept. of Ins.*, 80 Ohio St.3d 513, 525, 687 N.E.2d 661 (1997).

### Attorney-Client Privilege

{¶20} "The attorney-client privilege, which covers records of communications between attorneys and their government clients pertaining to the attorneys' legal advice, is a state law prohibiting release of these records." *State ex rel. Toledo Blade Co. v. Toledo-Lucas County Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 22. The party asserting the attorney-client privilege bears the burden of showing the applicability of the privilege. *State ex rel. Pietrangelo v. Avon Lake*, 146 Ohio St.3d

292, 2016-Ohio-2974, ¶ 9; *MA Equip. Leasing I, LLC v. Tilton*, 10th Dist. Franklin Nos. 12AP-564 and 12AP-586, 2012-Ohio-4668, ¶ 20-22. To satisfy this burden, the proponent must show that the communication meets all the following conditions:

> "Under the attorney-client privilege, '(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.'" (Citations omitted.)

*State ex rel. Leslie v. Ohio Housing Fin. Agency,* 105 Ohio St.3d 261, 2005-Ohio-1508*,* 824 N.E.2d 990, ¶ 21. A bare, general assertion that the privilege applies to communications does not meet the proponent's burden. Rather,

> The claim of privilege must be made question-by-question and document-by-document.
>
> **Factual showing needed to demonstrate that a communications [sic] is privileged**. Conclusory descriptions of documents in a privilege log are insufficient to meet the producing party's burden of establishing that the document was an attorney-client communication. *In re Search Warrant Executed at Law Offices of Stephen Garea*, 1999 U.S. App. LEXIS 3861, 1999 WL 137499, *1-*2 (6th Cir. March 5, 1999). The party asserting privilege "must make a minimal showing that the communication involved legal matters. This showing is not onerous and may be satisfied by as little as a statement in the privilege log explaining the nature of the legal issue for which advice was sought." *Id*. That showing "must provide the reviewing court with enough information for it to make a determination that the document in question was, in fact, a confidential communication involving legal advice." 1999 U.S. App. LEXIS 3861, [WL] *2.

*Williams v. Duke Energy Corp.*, S.D.Ohio No. 1:08-CV-00046, 2014 U.S. Dist. LEXIS 109835, *14-15 (Aug. 8, 2014). *See Williamson v. Recovery Ltd. P'ship.*, S.D.Ohio No. 2:06-CV-292, 2016 U.S. Dist. LEXIS 125640, *8-10 (Sept. 15, 2016) (proponent made only conclusory statements, rather than an actual showing, that the attorney-client

privilege applied to subpoenaed documents).[2] A record is not exempt merely because it is received from or sent to a public office's legal counsel. *Better Gov't Bureau v. McGraw* (*In re Allen*), 106 F.3d 582, 604, (1997). Nor does respondent cite any support for the proposition that non-legal documents, such as press releases, become privileged communications merely because they are reviewed by, or copied to, an attorney.

{¶21} The Board summarizes its assertion of attorney-client privilege in this case as follows:

> The issue underlying this request deals with a very complicated lease negotiation and real property acquisition by the Respondent. Communication between attorneys and the parties related to this negotiation are necessary to move the negotiation forward. While any action taken by the public body must be performed in public, the negotiation, including discussions with attorneys, at times, must be conducted under the privilege. The fact that communications related to legal services occurred between attorney and client, and on behalf of the client to parties who share a common interest is enough to exempt the documents from disclosure.

(Response at 7.) As discussed below, the Board fails to support this assertion with adequate evidence.

**Evidence That Communication Related to Legal Advice**

{¶22} In order to elicit evidence regarding the Board's claim of privilege, the special master issued an order requiring the Board to provide the following detailed information regarding each withheld communication:

b. For each separate record submitted under seal, respondent shall:

i.  Identify the correspondence by sender, date, and time sent;

---

[2] There is no material difference between Ohio's attorney-client privilege and the federal attorney-client privilege. *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 177 (S.D.Ohio 1993), fn.3; *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, S.D.Ohio No. 2:07-CV-116, 2012 U.S. Dist. LEXIS 121830 (August 28, 2012).

ii. Identify by paragraph, line, and word, as appropriate, only those portions of the email or attachment that are alleged to meet the definition of attorney-client privileged material;

iii. For each portion so identified, describe the nature of the legal issue for which advice was being sought or provided, or how the communication was otherwise incident to or related to any legal advice;

iv. Support application of the elements of the attorney-client privilege to each identified portion, including by affidavit as appropriate.

(September 13, 2019 Order.) The Board's resulting privilege log, submitted in final form on January 27, 2020, contains general, conclusory descriptions of withheld emails and attachments, and bare assertions that the content of each email was protected by attorney-client privilege in its entirety. (Privilege Log – see columns titled Privileged Material Location, and Privileged Explanation.) The Board filed supporting affidavits of its counsel on the same date, that contained no greater detail. Neither the affidavits nor the privilege log identifies with specificity what particular content in any withheld document is a confidential attorney-client communication, or why. In most instances, the Board states only that the entire content of the correspondence is a "communication" involving counsel, or a "discussion" of the general topic of "negotiations," a "press release," or "talking points," "announcement of new lease amendment," "joint statement," a "draft document describing the negotiations," "negotiation matrix," and other publicity, strategic, and tactical, but not legal, matters. These documents do not contain any detailed, specific explanation as to how each communication's content is related to legal advice. *See Pietrangelo* at ¶ 11-17. The special master additionally reviewed the withheld documents in camera for any material that might self-evidently meet the definition of attorney-client privileged material.

{¶23} In a separate order, the special master invited the Board to explain the identity and role of each correspondent to the withheld communications, including:

2. The nature of legal representation being provided at the time of the subject correspondence by each person who respondent asserts was giving or obtaining information subject to the attorney-client privilege through the correspondence.

3. The formal basis of the attorney-client relationship for every correspondent who respondent asserts was providing advice or gathering information in the role of a legal counsel to respondent.

(March 25, 2020 Order at 1.) In a list filed on April 8, 2020, the Board provided the following information regarding its outside legal counsel:

**Nature of Legal Representation**
Mr. Gabelman, and the law firm of Frost Brown Todd ("FBT"), were engaged to act as outside legal counsel for the Board of County Commissioners for Hamilton County. The particular emphasis of this representation was for the negotiation of agreements pertaining to the redevelopment of the riverfront, including the development of The Banks project along the Ohio River. All correspondence and documentation generated by Mr. Gabelman and/or the FBT attorneys represent attorney-client privileged communications and/or attorney work product which are the subject of specific request in this pending matter. Such request pertains to communications and work product documentation regarding the negotiation of numerous agreements regarding the development of The Banks Project, including the negotiation of numerous agreements relating to the development of a music venue, the acquisition of riverfront property by Hamilton County, as well as lease negotiations between Hamilton County and the Cincinnati Bengals. Such negotiations also pertained to Hamilton County and Cincinnati Bengals development of a funding and financing structure with respect to the acquisition of real property on the Cincinnati riverfront.

**Formal Basis for Attorney Client Privilege**
Mr. Gabelman and the law firm of Frost Brown Todd, were retained as outside legal counsel to assist the Hamilton County Board of County Commissioners and Hamilton County Prosecuting Attorney's Office to develop property on the riverfront known as The Banks, as well as negotiate various agreements with the City of Cincinnati, the Cincinnati Reds, the Cincinnati Bengals, US Bank Arena, the National Underground Railroad Freedom Center, and various developers on The Banks.

Hamilton County Board of County Commissioners entered into an agreement for such legal counsel services in 1997.

(April 8, 2020 List at 1.) The first paragraph describes Mr. Gabelman's role as a negotiator of agreements for the Board, and makes a bare assertion that any and all requested communications by Mr. Gabelman or his firm regarding those negotiations are attorney-client privileged communications. The second paragraph states that Mr. Gabelman and his firm were retained as legal counsel to assist the Board in property development and to "negotiate various agreements." The Board did not provide the terms of Mr. Gabelman's 1997 agreement for his legal counsel services. Neither paragraph specifies any legal issue for which Mr. Gabelman provided or facilitated legal advice through the withheld communications.

{¶24} The description of Assistant Prosecuting Attorney Roger Friedmann's role is functionally identical to Mr. Gabelman's:

**Nature of Legal Representation**
Mr. Friedmann is an Assistant Prosecuting Attorney for the Hamilton County Prosecutor's Office. Among his various roles, Mr. Friedmann is the lead attorney for the Prosecutor's Office on negotiations relating to property acquisition by Hamilton County, The Banks development and lease negotiations with the Cincinnati Bengals regarding the lease for the development and operation of Paul Brown Stadium, and property acquisition related issues.

**Formal Basis for Attorney Client Privilege**
The Hamilton County Prosecuting Attorney is the statutory Legal Adviser to the Hamilton County Board of County Commissioners.

(*Id.* at 2.) The description of Mr. Friedmann's representation is as a negotiator, not a provider of legal advice on any reasonably specified issue. The list of correspondents in fact draws no meaningful distinction between the roles of these attorneys, and of their clients - all described as involved in negotiating agreements on behalf of the Board.

{¶25} The affidavits of Messrs. Gabelman and Friedmann filed on January 27, 2020 do not identify any legal issues on which advice was sought or given in the

withheld communications, referring only to the affiants' roles as negotiators. (e.g., Friedmann Aff. at ¶ 7, 11-19; Gabelman Aff. at ¶ 7, 9-16.) The bare statements of counsel that they "believed" all their communications were privileged, confidential,[3] and not waived (Freidmann Aff. at ¶ 7-8, 11; Gabelman Aff. at ¶ 7-9) is not sufficient, and only highlights the absence of evidence that any legal advice was sought or given in the text of these communications on particular legal issues.

{¶26} The evidence shows only that the Board used its attorneys as negotiators, and included or copied them on discussions of contractual terms and meeting scheduling. That evidence, by itself, falls far short of proving that the substantive content of the communications falls squarely under the attorney-client privilege. In contrast, in *State ex rel. Toledo Blade Co. v. Toledo-Lucas County Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221 the respondent contracted with an attorney to identify and investigate the factual and legal issues concerning allegations that its president had committed improper, possibly criminal acts. *Id.* at ¶ 4, 29. Respondent submitted affidavits of the Port Authority Board Chairman and its attorney. The Supreme Court was provided with the legal issues on which advice was provided, and how that advice was evidenced in resulting documents:

> Both the port authority and its outside counsel knew that the investigation was replete with various legal issues and consequences that would be better resolved by the port authority's employing its long-time attorney to conduct the investigation and prepare the report. Legal issues included interpretation of Hartung's employment contract, an analysis of ethics law and criminal law, potential tort claims by Hartung and Teigland, and the construction of a confidentiality provision in the settlement agreement

---

[3] Counsel's assertions that they "made and received these communications in confidence" include no description of control exercised over recipient copies. One counsel admits using his personal email account for some of the communications. *Compare Toledo-Lucas County Port Auth.* at ¶ 5 (numbered copies of report given to board members in sealed envelopes during executive sessions and were later returned to the law firm. Members were informed that the report was confidential and could not be shown to any third party). The Enquirer disputes the confidentiality of email shared with third parties, including a public relations consultant, but not those limited to Board employees and counsel.

concerning a previous port authority investigation. Legal analysis related to the facts in the investigation is integrated throughout the report.

(*Id.* at ¶ 29.)

{¶27} The pleadings and affidavits filed in this case by the Hamilton County Board of Commissioners do not present comparable testimony or documentation supporting attorney-client privilege. The special master recognizes that, hypothetically, the text of a communication might not relate on its face to legal advice without additional explanation and context. To that end, as noted above, the Board was invited to submit specific support for its assertion of attorney-client privilege. In response, the Board failed to provide any additional evidence that its attorneys actually rendered legal advice, or that any specific communication reflected the attorneys' "professional skills and judgment." *Id.* at ¶ 27, 31. "[I]f a communication between a lawyer and client would facilitate the rendition of legal services or advice, the communication is privileged." *Id.* at ¶ 27. However, almost all the correspondence in this case reflects only the participation of legal counsel in policy, negotiation of terms, scheduling, or other business decisions that do not directly involve their professional services. *See Williams v. Duke Energy Corp.,* S.D.Ohio No. 1:08-CV-00046, 2014 U.S. Dist. LEXIS 109835, *15-16 (Aug. 8, 2014).

> Communications to a lawyer for business purposes are not privileged. Documents prepared and emailed for review by both legal and nonlegal employees are often held to be not privileged because the communications were not made for the primary purpose of seeking legal advice. *North Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 514 (M.D. N.C. 1986). Documents whose "primary purpose" was "business negotiations" rather than "legal advice" are not privileged. *United States v. Davis*, 131 F.R.D. 391, 401 (S.D. N.Y. 1990).

*Id.* at *8 (see *41-88 for application to case documents including email). *See Hinners v. Huron*, Ct. of Cl. 2018-00549PQ, 2018-Ohio-3652, ¶ 10 ("[T]he general statement that an attorney was 'utilized' 'to advise' 'on matters of real estate acquisition, negotiation

and development' falls short of clear proof that the attorney was providing legal advice in any particular correspondence related to those matters."). Likewise, outlining business matters such as whether a meeting is planned or has occurred does not constitute attorney-client communication. *McFarland v. West Congregation of Jehovah's Witnesses, Lorain, OH, Inc.*, 2016-Ohio-5462, 60 N.E.3d 39, ¶ 70 (9th Dist.).

{¶28} I find that the Board's assertions of attorney-client privilege are based solely on conclusory descriptions and statements. Neither the affidavits nor the privilege log meets the Board's minimal burden to identify and explain the nature of any legal issue upon which advice was sought or provided through a given communication. *Williams v. Duke Energy Corp.* at *14-15.

### Disclosure of Communication to Non-Essential Third Party

{¶29} Separately, the assertion of privilege has been waived for many of the withheld communications. "[T]he attorney-client privilege is destroyed by voluntary disclosure to others of the content of the statement." *State v. Post*, 32 Ohio St.3d 380, 385, 513 N.E.2d 754 (1987).

> Because a client's voluntary disclosure of confidential communications is inconsistent with an assertion of the privilege, voluntary disclosure of privileged communications to a third party waives a claim of privilege with regard to communications on the same subject matter. *Hollingsworth v. Time Warner Cable*, 157 Ohio App.3d 539, 2004-Ohio-3130, ¶ 65, 812 N.E.2d 976 (1st Dist.), citing *Mid-Am. Nat'l Bank & Trust Co. v. Cincinnati Ins. Co.*, 74 Ohio App. 3d 481, 599 N.E.2d 699 (6th Dist.1991), and *United States v. Skeddle*, 989 F.Supp. 905, 908 (N.D.Ohio 1997). See also *In re Teleglobe Communications Corp. v. BCE Inc.*, 493 F.3d 345, 361 (3d Cir.2007) ("Disclosing a communication to a third party unquestionably waives the privilege.").

*MA Equip. Leasing I, LLC v. Tilton*, 980 N.E.2d 1072, 2012-Ohio-4668, ¶ 20 (10th Dist.). In addition to communications directly shared, disclosure to a third party waives the claim of privilege with regard to all other communications on the same subject matter.

*Hollingsworth v. Time Warner Cable*, 157 Ohio App.3d 539, 2004-Ohio-3130, 812 N.E.2d 976, ¶ 65. The 'same subject matter' standard is, however, applied narrowly. *Id.*

{¶30} In determining whether a person to whom a communication was disclosed is a third party or not, the party asserting the privilege bears the burden of proof. *MA Equip. Leasing* at ¶ 21-22. On review of the evidence submitted I find, first, that certain correspondence included a communications and public relations consultant retained by the Board, Anne C. Sesler (Correspondent List at 5), as a correspondent. The Board provides no explanation as to how Ms. Sesler's participation was essential to the provision of legal advice. There is no evidence as to how her inclusion in any communication of legal advice was necessary, as opposed to merely convenient. See *Foulk v. Upper Arlington*, Ct. of Cl. No. 2017-00132PQ, 2017-Ohio-4249, ¶ 20-21, and cases cited therein. I find that the attorney-client privilege either did not attach, or was waived, for those communications in which Ms. Sesler was included as a party correspondent.

{¶31} Next, certain withheld records (Bates Nos. 277-381) include as correspondents one or more employees of an entirely separate, private entity, the Cincinnati Bengals organization. The Board asserts that the attorney-client privilege applies to these communications because they involved negotiation of real estate matters on which the Board's counsel were providing legal advice to the Board. However, under the cases cited above, disclosure of information to a third party waives the privilege, even assuming, arguendo, that the Board had shown its counsel provided it with legal advice on the matter. Indeed, the concept of waiver assumes that there was something to waive. The Board cites no authority to the contrary.

{¶32} Finally, internal communications from a client to an attorney, conveying authority to act on the client's behalf in entering into an agreement, are by their nature not intended to be confidential and are not privileged.

> The purpose of the privilege is to permit complete freedom of disclosure
> by a client to his attorney without fear that any facts so disclosed will be

used against him. Where the communication is not intended to be confidential, it is not within the privilege. *Taylor v. Sheldon* (1961), 172 Ohio St. 118 [15 O.O.2d 206]; *Emley v. Selepchak* (1945), 76 Ohio App. 257 [31 O.O. 558]. By its very nature, a communication from a client to his attorney conveying authority to the attorney to act on his behalf as his agent in entering into an agreement with the opposing party, is a communication which is intended to be communicated to the opposing party. Because such a conversation is not intended to be confidential, it is not privileged. See *In re Martin* (1943), 141 Ohio St. 87, at 104 [25 O.O. 225].

*Walsh v. Barcelona Associates, Inc.*, 16 Ohio App.3d 470, 472, 476 N.E.2d 1090 (10th Dist.1984). *Accord Lutz v. Carter*, 2nd Dist. Clark No. No. 2660, 1990 Ohio App. LEXIS 4342, *12 (Oct. 3, 1990); *Cannell v. Rhodes*, 31 Ohio App.3d 183, 186, 509 N.E.2d 963 (8th Dist.1986). The privilege has been waived for such documents.

### Common Interest

{¶33} The Board asserts that the privilege was not waived for correspondence that included counsel and employees of the Cincinnati Bengals organization, because of the "common interest" doctrine.

[T]he common interest doctrine operates as an exception to the general rule that disclosure of privileged materials to a third party waives the privilege. This exception typically arises when parties "'are either represented by the same attorney or are individually represented, but have the same goal in litigation.'" *William F. Shea, LLC v. Bonutti Research, Inc.*, S.D.Ohio No. 2:10-CV-615, 2013 U.S. Dist. LEXIS 48819, *5-6 (Apr. 4, 2013), quoting *Cooey v. Strickland*, 269 F.R.D. 643, 652 (S.D.Ohio 2010).

*Condos. at Stonebridge Owners' Assn. v. K&D Group, Inc.*, 8th Dist. Cuyahoga No. 100261, 2014-Ohio-503, ¶ 10-16.

Apparently, the so-called "common interest privilege" of the attorney-client privilege is succinctly set forth in McCormick on Evidence (6 Ed.2006) 413-414, Section 91.1:

Another step beyond the joint client situation is the instance where two or more clients, each represented by their own

> lawyers, meet to discuss matters of common interest-commonly called a joint defense agreement or pooled information situation. Such communications among the clients and their lawyers are within the privilege. Although it originated in the context of criminal cases, the doctrine has been applied in civil cases and to plaintiffs in litigation as well as defendants. * * *

*State ex rel. Bardwell v. Cordray*, 181 Ohio App.3d 661, 2009-Ohio-1265, 910 N.E.2d 504, ¶ 87 (10th Dist.).

> To fall within the common interest exception, it must be shown that "(1) the communications were made in the course of a joint defense effort; [and] (2) the statements were designed to further the effort * * *." *Travelers Cas. and Sur. Co. v. Excess Ins. Co. Ltd.*, 197 F.R.D. 601, 606 (S.D.Oh. 2000), quoting *In re Bevill, Bresler & Schulman Asset Management Corp.*, 805 F.2d 120, 126 (3d Cir.1986). The common interest exception should be construed narrowly. *Cigna Ins. Co. v. Cooper Tires and Rubber, Inc.*, N.D.Ohio No. 3:99CV7397, 2001 WL 640703, *2 (May 24, 2001). Therefore, the exception will only apply where the "disclosures are made in the course of formulating a common legal strategy." (Internal quotations and citations omitted.) *Id.*

*Buckeye Corrugated, Inc. v. Cincinnati Ins. Co.*, 9th Dist. Summit No. 26634, 2013-Ohio-3508, ¶ 15.

{¶34} On the evidence submitted, I find that the Board's and the Cincinnati Bengals' interests were not aligned in these negotiations. The two entities were not jointly pursuing or defending litigation, were not represented by the same attorney, were not formulating a common "legal strategy," and in the event of dispute over the agreements they entered might instead be opposing parties. The Board was involved in an arm's-length negotiation with an independent, private entity represented by its own counsel to negotiate their respective costs and other consideration in entering agreements and acquiring property. I find that the Board has provided no support for the proposition that negotiating any relevant agreement constituted a "common interest" so as to preclude waiver of the attorney-client privilege.

{¶35} I therefore find that the Board waived the attorney-client privilege with respect to all communications and attachments sent to and received from Bengals' counsel and/or employees in the course of their negotiations.

{¶36} On the basis of the evidence before the court, or lack thereof, regarding identification of legal issues, confidentiality, and disclosure to third parties, I conclude that the Board has not shown that the withheld communications fall squarely within the common law attorney-client communication privilege,[4]

**Attorney Work Product**

{¶37} The Board separately asserts that the withheld material is excepted from disclosure as common law attorney work product. The party seeking protection under the work-product doctrine bears the burden of establishing that the doctrine applies. *In re Special Grand Jury Investigation*, 2019-Ohio-4014, 145 N.E.3d 1206, ¶ 12 (10th Dist.). The Supreme Court of Ohio has explained work product protection as follows:

> The work-product doctrine emanates from *Hickman v. Taylor* (1947), 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451, in which the Supreme Court of the United States recognized that "[p]roper preparation of a client's case demands that [the attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. * * * This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways - aptly though roughly termed by the Circuit Court of Appeals in this case as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."
>
> Addressing these concerns, the work-product doctrine provides a *qualified* privilege protecting the attorney's mental processes in

---

[4] With the few exceptions noted in the table of permitted exemptions, below.

preparation of litigation, establishing "a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary." However, as the Supreme Court of the United States has explained, "the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system," and the privilege afforded by the work-product doctrine is not absolute.

*Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 53, ¶ 54-55 (internal citations omitted). Thus, the two elements of common law attorney work-product are: 1) the document must be a product of the respondent's attorney's mental processes, and 2) have been made in anticipation of litigation.

{¶38} On review of the pleadings, affidavits, privilege log, correspondent list, and materials submitted under seal, I find that a number of the communications involving Board attorneys do not appear to have been drafted by or in consultation with Board counsel so as to reflect the attorney's mental processes. But more importantly, and dispositive as to all the withheld records, nowhere in its pleadings, affidavits, privilege log, or correspondent list does the Board assert that *any* of the records were created in anticipation of litigation. To determine whether a document was prepared "in anticipation of litigation," the court must evaluate "whether the document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose." (Citation omitted.) *In re Special Grand Jury Investigation* at ¶ 13. In the few instances where one Board attorney communicated legal advice it was transactional in nature, not in anticipation of litigation.

{¶39} Accordingly, I find that the Board has not met its burden to show that any of the withheld records were subject to the common law attorney work product privilege.

**Ohio Uniform Trade Secrets Act**

{¶40} A public office's own trade secret, in its possession, is a record the release of which is prohibited by state or federal law. *State ex rel. Luken v. Corp. for Findlay Mkt. of Cincinnati*, 135 Ohio St.3d 416, 420, 2015-Ohio-1532, 988 N.E.2d 546, ¶ 17.

*See State ex rel. Perrea v. Cincinnati Pub. Sch.*, 123 Ohio St.3d. 410, 2009-Ohio-4762, 916 N.E.2d 1049, ¶ 19. An *in camera* inspection is usually necessary to determine the merits of a trade secret claim. *State ex rel. Besser v. Ohio State Univ.*, 87 Ohio St.3d 535, 541-542, 721 N.E.2d 1044 (2000) ("*Besser I*"). The Ohio Uniform Trade Secrets Act defines "trade secret" as:

> information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

R.C. 1333.61(D).

{¶41} "An entity claiming trade secret status bears the burden to identify and demonstrate that the material is included in categories of protected information under the statute and additionally must take some active steps to maintain its secrecy." *Besser II,* 89 Ohio St.3d 396, 400, 732 N.E.2d 373 (2000). To meet this burden, the entity must provide more than conclusory statements in affidavits to show which, if any, information is a "trade secret." *Id.* at 400-404. *Accord Harris v. Belvoir Energy, Inc.*, 8th Dist. Cuyahoga No. 103460, 2017-Ohio-2851, ¶ 16; *Arnos v. MedCorp, Inc.*, 6th Dist. Lucas No. L-09-1248, 2010-Ohio-1883, ¶ 28. The following factors are used in trade secret analysis:

> (1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors;

(5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Besser II* at 399-400. In support of its burden in this case, the Board asserts that,

[t]he trade secret information relates to a complicated lease negotiation and potential real property acquisition. The information is not known outside of the Board, except by those whom the Board is directly dealing with in this negotiation. Only those at the Board who are involved in the negotiation know about this information. And this dissemination to third parties does not invalidate the trade secret nature of the information, as the owner of the trade secret can determine with whom they want to share the trade secret information. *State, ex rel. Allright Parking of Cleveland, Inc., v. Cleveland*, 63 Ohio St.3d 772, 775 (1992). The Board has taken great steps to guard the secrecy of this information, including withholding it from the Requester and the public at this time. The information, if made public, would cause price increases and competitive disadvantages and would result in a detrimental economic impact to the Board and Hamilton County ratepayers as a whole. The information was obtained through many months of negotiation and work and if disseminated widely would threaten that work. Finally, it is not clear that others could duplicate the work needed to obtain this information.

(Response at 10.) However, standing alone these are merely general, unquantified assertions of the *Besser* factors.

{¶42} To elicit further evidence, the special master ordered the Board to file the unredacted communications under seal, and state with specificity what parts the Board can show are trade secret. In its privilege log, the Board claims that the following pages of the withheld records contain its own trade secrets: 132-133, 135-136, 138-139, 304-311, 335-342, 347-360, 364-371, and 375-381. The affidavits of Board counsel (April 8, 2020 Friedmann Aff. at ¶ 18-23; Gabelman Aff. at ¶ 18-23) assert generally that the records contain information that meets the trade secret factors, but provide no specifics as to how. Neither do the affidavits of Board counsel establish expertise in the areas of finance and financial models, which are the only categories of information referenced in the privilege log as "trade secret." I find that the Board provides no more than

conclusory statements in affidavits to show which, if any, information is a "trade secret." *Besser II* at 400-404.

**Application of *Besser* Factors**

**(1) The extent to which the information is known outside the business.**

{¶43} The Board asserts only that "[t]he information is not known outside of the Board, except by those whom the Board is directly dealing with in this negotiation." (Response at 10.) The Cincinnati Bengals organization and their counsel clearly have direct knowledge of the information contained in Withheld Records p. 304-311, 335-342, 347-360, 364-371, and 375-381. Further, so much of the information as was disclosed to the public as part of the final agreement or was voted on by the Board in an open meeting (Friedmann Aff. at ¶ 14, 26; Gabelman Aff. at ¶ 12, 24) is known outside the office and unequivocally became public record at that time.

**(2) The extent to which it is known to those inside the business, i.e., by the employees.**

{¶44} The Board attests that "[o]nly those at the Board who are involved in the negotiation know about this information." (Response at 10.) The Board provides no more specific evidence addressing access of other Board employees to the information. However, the Enquirer does not challenge this representation. The court may therefore accept the representation of the Board on this factor.

**(3) The precautions taken by the holder of the trade secret to guard the secrecy of the information.**

{¶45} While trade secret is not waived by inclusion in an application or proposal, *State ex rel. Seballos v. School Emp. Retirement Sys.*, 70 Ohio St.3d 667, 671, 640 N.E.2d 829 (1994), neither does a negotiating process enable blanket assertion of trade secret. "A business or possessor of a potential trade secret must take some active steps to maintain its secrecy in order to enjoy presumptive trade secret status." *State ex rel. Plain Dealer v. Ohio Dept. of Insurance*, 80 Ohio St.3d 513, 525, 687 N.E.2d 661 (1997). "[T]he holder of a trade secret is protected against disclosure or unauthorized

use of the trade secrets by those to whom it has been confided *on the condition that the secret not be disclosed.*" (Emphasis added.) *R & R Plastics v. F.E. Myers Co.,* 92 Ohio App.3d 789, 802, 637 N.E.2d 332 (6th Dist.1993). The Board took no discernable steps to guard against disclosure of the withheld information by the Cincinnati Bengals organization, and the Board does not point to any legal restriction on the Bengals organization from disclosing any or all of the information they exchanged.[5]

{¶46} Likewise, the Board alleges no specific efforts to ensure that its own members, employees, or consultants maintain the secrecy of the information. "There is no presumption that any particular idea imparted to or acquired by an employee is a trade secret unless the possessor takes active steps to maintain its secrecy." *Hoffman-La Roche Inc. v. Yoder*, 950 F.Supp. 1348, 1360 (S.D.Ohio 1997), citing *Water Management, Inc. v. Stayanchi*, 15 Ohio St.3d 83, 85-86, 472 N.E.2d 715 (1984). An entity claiming trade secret protections must demonstrate that it undertook reasonable security measures to protect information known to employees. *Hoffman-La Roche* at 1361. Such efforts may include written or oral confidentiality agreements, facial marking indicating confidentiality, internal or external controls on physical access to information, and policies for retrieval or collection of disseminated documents. *Id*. at 1361-1364. There is no evidence that the Board undertook such efforts in this matter.

{¶47} Further, a party claiming trade secret protection must take reasonable steps to prevent disclosure by other parties with access to the information. *See Jedson Eng., Inc. v. Spirit Constr. Servs.*, 720 F.Supp.2d 904, 922 (S.D.Ohio 2010) (subcontractor was not entitled to trade secret protection for drawings given to a general contractor where there was no evidence the subcontractor took active steps to maintain the secrecy of its drawings vis-à-vis third parties); *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 273-74 (6th Cir.2010) (software developer did nothing to prevent

---

[5] In any case, "an agreement of confidentiality, standing alone, cannot support a trade secret claim." *State ex rel. Plain Dealer v. Ohio Dept. of Ins.*, 80 Ohio St.3d 513, 527, 687 N.E.2d 661 (1997).

customers from allowing third parties to view its software interface); *In re Alternative Energy Rider Contained in the Tariffs of Ohio Edison Co.*, 153 Ohio St.3d 289, 2018-Ohio-229, 106 N.E.3d 1, ¶ 40-43 (utility company took reasonable steps to maintain secrecy of supplier and bid information where it entered into protective agreements with suppliers and other parties with access to the information). "[A]n owner's disclosure to potential or actual customers, absent a confidential agreement or understanding, will destroy any protection of that information as a trade secret." *R & R Plastics v. F.E. Myers Co.*, 92 Ohio App.3d 789, 802, 637 N.E.2d 332 (6th Dist.1993). In this case, the Board provides no evidence that the entity with which it was negotiating agreements, or its public relations consultant Ms. Sesler, agreed or understood that the information now claimed as trade secret was to remain confidential.

{¶48} The Board's bare assertion that it took unspecified "great steps to guard the secrecy of this information, including withholding it from the Requester and the public at this time" (Response at 10), is a conclusory statement with insufficient evidentiary value. Under the circumstances, I find the Board has not shown that it has taken any identified precautions to maintain secrecy of the information.

### (4) The savings effected and the value to the holder in having the information as against competitors.

{¶49} In *In re Emily Opilo and the Morning Call v. Penn. Dept. of Comm. and Econ. Dev.*, No. AP 2018-0145, 2018 PA O.O.R.D. LEXIS 432, *20-26, a state office released part of its Amazon HQ2 proposal but asserted trade secret for the "incentive proposal" portion. *Id.* at *20-23. The office claimed that disclosure would harm agency "economic development initiatives to draw business to the Commonwealth by forcing them to negotiate in public." *Id* at *23. In rejecting the claim, the Pennsylvania Office of Open Records found the assertions of harm speculative and conclusory, and that "[m]ost importantly, the Department does not adequately address *how* other persons can obtain economic value from the Incentive Proposal's disclosure." (Emphasis sic.) *Id.*

The Board here likewise fails to address *how* other persons would gain an economic benefit from disclosure of the information it claims to be trade secret.

{¶50} In general, records that detail strategy, planning, bids and negotiations do not automatically qualify as trade secrets. *State ex rel. Plain Dealer v. Ohio Dept. of Insurance,* 80 Ohio St.3d 513, 526, 687 N.E.2d 661 (1997). The Board makes no effort to quantify any savings effected, or the value to the Board in having the information as against future competitors. It attests only that

> [t]he information, if made public, would cause price increases and competitive disadvantages and would result in a detrimental economic impact to the Board and Hamilton County ratepayers as a whole. The information was obtained through many months of negotiation and work and if disseminated widely would threaten that work.

(*Id.*) With respect to financial models, the Supreme Court found in *Besser II,* 89 Ohio St.3d 396, 732 N.E.2d 373 (2000) that OSU's *business plan*, staffing contract, *profit/loss analysis*, acquisition goal summaries, working assumptions for operations, notes and research on comparable hospitals, draft asset purchase agreement, and pro forma for acquisition of a hospital were not proven to be trade secret. *Id.* at 399-406. The Court rejected OSU's argument that if it entered into future negotiations similar to the failed transaction, opposing parties could use these bid details "to determine OSU's valuation process, negotiating style, and internal processes for making and receiving offers, and that competitors can use this information even now to attack, undermine, and circumvent OSU's business strategies," finding that OSU had provided no factual evidence to support its conclusory statements and arguments. *Id.* at 401-402.

{¶51} Likewise, the Board provides no evidence to show that the financial information it used in this negotiation will have any value in future negotiations. The Board cannot affirm that a future administration will offer identical terms to a different partner, even in the unlikely event that market conditions remain static. *See In re Alternative Energy Rider Contained in the Tariffs of Ohio Edison Co.,* 153 Ohio St.3d

289, 2018-Ohio-229, 106 N.E.3d 1, ¶ 34, 36 (considering changes in market conditions when evaluating the continuing economic value of information). The Board has provided no factual evidence that its financial information relevant to this negotiation was so unique, compelling, or otherwise valuable that competitors would gain a cognizable economic benefit from their disclosure in the immediate future. At the same time, these negotiations were crafted for an ephemeral situation that the Board does not show will recur. *See Plain Dealer, supra*. The circumstances of future property negotiations will be different, and the Board has not shown that keeping this particular financial information a secret will benefit the Board at a later date. *Besser II* at 401-403. *See Buduson v. Cleveland*, Ct. of Cl. No. 2018-00300PQ, 2019-Ohio-963, ¶ 31-32. Instead of providing clear explanation and evidence, the Board does no more than aver vaguely that if it isn't allowed to keep this correspondence secret, "bad things" will happen.

{¶52} Further, the deal the Board was negotiating has apparently concluded. (Reply at 5, Exh. 2.) Information specific to a completed process generally does not retain independent economic value under the Ohio Uniform Trade Secrets Act, unless the entity claiming trade secret offers specific evidence that the information would still be beneficial to competitors. *See Besser II* at 403; *Plain Dealer, supra*; *In re Alternative Energy Rider* at ¶ 36. The Board has made no such showing.

{¶53} Therefore, the Board fails to demonstrate that the financial information in these communications has any significant or persisting value as against the Board's competitors in future transactions.

### (5) The amount of effort or money expended in obtaining and developing the information.

{¶54} The Board makes no effort to quantify the "amount of effort or money expended in obtaining and developing the information" involved here. The Board states only that "[t]he information was obtained through many months of negotiation and work and if disseminated widely would threaten that work." (Response at 10.) This statement

is unquantified, vague, and conclusory. I find the Board has not shown that it expended a significant amount of money or effort in developing the information at issue.

### (6) The amount of time and expense it would take for others to acquire and duplicate the information.

{¶55} The mere fact that obtaining information may take some effort does not make the information a trade secret. *Brakefire, Inc. v. Oberveck*, 144 Ohio Misc.2d 35, 2007-Ohio-6464, 878 N.E.2d 84, ¶ 33 (C.P.) The Board makes only the ambiguous statement that "*it is not clear* that others could duplicate the work needed to obtain this information." (Emphasis added.) (Response at 10.) It makes no attempt to quantify this assertion. Again, both the Board and future negotiating partners will rely on different, updated information for future purchases. I find that the Board fails to adequately demonstrate "the amount of time and expense it would take for others to acquire and duplicate the information" that it lists as trade secret.

### The Besser Factors Do Not Support a Finding of Trade Secret

{¶56} The Board relies on general and conclusory statements regarding the economic value of keeping the bid information secret from the public rather than factual evidence or expert testimony in support. The Board submitted no evidence of how often it has been or reasonably expects to be presented with circumstances analogous to the negotiation here, and there is no reason to believe that the conditions of future property lease or acquisition would be identical. Review *in camera* fails to demonstrate that future "competitors" would accomplish any significant savings of time or expense by knowing the particular financial models and other information communicated under the particular circumstances of this negotiation. Respondent has provided no persuasive evidence of how any of the information "derives independent economic value, actual or potential, from not being generally known." There is no credible evidence that the information withheld would benefit the Board in future transactions.

{¶57} The Board satisfies neither of the two mandatory requirements for trade secret protection under the Ohio Uniform Trade Secrets Act: 1) by failing to identify efforts to prevent disclosure by other parties, the Board fails to show that it took efforts reasonable under the circumstances to maintain the secrecy of the information; (R.C. 1333.61(D)(2)) and, 2) by producing no evidence of the continuing value of the financial and other information, the Board fails to show that the information derives independent economic value (R.C. 1333.61(D)(1)). Thus, the information is not trade secret, and is not exempt from disclosure under R.C. 149.43. Considering the evidence in light of the *Besser* factors, I find that the Board has not met its burden to prove that any of the claimed information fits squarely within the trade secret exception.

### Records Containing Exemptions Must Be Redacted in a Manner That Discloses Non-Exempt Contents

{¶58} In its January 27, 2020 privilege log, the Board claims that every line of substantive text in the withheld records is privileged (compare January 27, 2020 Privilege Log, column titled Privileged Material Location, with the sealed records), rather than conceding that documents can be redacted to obscure only privileged portions. The Board asserts that *any* communication between an attorney and their client can be withheld in its entirety, and need not be redacted at all. (Response at 6.) This assertion is contrary to statutory and case law.

{¶59} The Public Records Act provides that only the information within a record that is exempt may be withheld:

> If a public record contains information that is exempt from the duty to permit public inspection or to copy the public record, the public office or the person responsible for the public record shall make available all of the information within the public record that is not exempt.

R.C. 149.43(B)(1). Where specific information in a questionnaire, form or other record is exempt, only the protected information may be redacted. *See Cuyahoga Cty. Bd. of Health v. Lipson O'Shea Legal Group,* 2013-Ohio-5736, 6 N.E.3d 631, ¶ 5, 29-31 (8th

Dist.), affirmed by *Cuyahoga Cty. Bd. of Health v. Lipson O'Shea Legal Group*, 145 Ohio St.3d 446, 2016-Ohio-556, 50 N.E.3d 499, ¶ 4, 12; *State ex rel. Beacon Journal Publ. Co. v. Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 13. When asserting attorney-client privilege, a public office must redact only the exempt portions of the record, and make available all of the information within the public record that is not exempt.[6] *State ex rel. Anderson v. Vermilion*, 134 Ohio St.3d 120, 2012-Ohio-5320, 980 N.E.2d 975, ¶ 19 (affirming the "explicit duty" to do so in R.C. 149.43(B)(1)). Portions of an attorney communication that are nonexempt, such as the general title of the matter being handled, underlying facts of the case, dates of service, financial arrangements, and the like must be disclosed. *Id.* at ¶ 15; *Plogger v. Myers*, 2017-Ohio-8229, 100 N.E.3d 104, ¶ 9 (8th Dist.). The Supreme Court has consistently required an in camera inspection of records before determining whether they are excepted from disclosure, and "[i]f the court finds that these records contain excepted information, this information must be redacted *and any remaining information must be released*." (Emphasis added.) *State ex rel. Lanham v. DeWine*, 135 Ohio St.3d 191, 2013-Ohio-199, 985 N.E.2d 467, ¶ 22 (attorney-client privilege), citing *State ex rel. Natl. Broadcasting Co. v. Cleveland*, 38 Ohio St.3d 79, 526 N.E.2d 786 (1988), paragraph four of the syllabus. Thus, the Board should be ordered consistent with the directions in the table below to disclose all non-privileged portions of the withheld records.

### Non-Records

"Records" are defined in R.C. 149.011(G) as including:

> any document, device, or item, regardless of physical form or characteristic, * * * created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.

---

[6] Unless the exempt portion is "inextricably intertwined" with the remaining exempt material. Although this exception to the rule is not alleged by the Board, see *Narciso v. Powell Police Dept.*, Ct. of Cl. No. 2018-01195PQ, 2018-Ohio-4590, ¶ 8-13 for discussion of redaction vs. "inextricably intertwined."

The definition of "record" does not include every piece of paper on which a public officer writes something, or every document received by a public office. *State ex rel. Cincinnati Enquirer v. Ronan*, 127 Ohio St.3d 236, 2010-Ohio-5680, 938 N.E.2d 347, ¶ 13. With regard to personal information contained in a public record,

> disclosure of information about private citizens is not required when such information "'reveals little or nothing about an agency's own conduct'" and "would do nothing to further the purposes of the Act." 88 Ohio St.3d at 368 and 369, 725 N.E.2d 1144, quoting *United States Dept. of Justice v. Reporters Commt. for Freedom of the Press* (1989), 489 U.S. 749, 780, 109 S.Ct. 1468, 103 L.Ed.2d 774.

*State ex rel. Beacon Journal Publishing Co. v. Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 9-13. For example, employee home addresses that do not serve to document the functions, policies, decisions, procedures, operations, or other activities of the office are not a "record" of the office. *State ex rel. Dispatch Printing Co. v. Johnson,* 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, ¶ 20-41.

{¶60} The Board argues that the personal email address of counsel is a non-record. (Friedmann Aff. at ¶ 9-10.) The Enquirer does not dispute this assertion, and there is no evidence that counsel's personal email address was used for other than administrative convenience. See *Dispatch* at ¶ 25-26. I find that counsel's personal email address may be redacted from the withheld records.

**Permitted Exemptions in The Withheld Records**

{¶61} The Board did not meet its burden to establish that any withheld record contained attorney work product, and the table therefore makes no reference to that exemption.

| Bates No. | Description of Document | Parties on Email correspondence | Attorney-Client Privilege | Trade Secret | Non-Record |
|---|---|---|---|---|---|
| 1-2 | Email re wording of talking points re lease amendment | Thomas Gabelman, Anne Sesler, Jeff Aluotto, Theresa Giglio, Roger Friedmann | No:  1) No showing that wordsmithing of publicity talking points regarding lease amendments is related to legal | No | |

| | | | | |
|---|---|---|---|---|
| | | | advice. 2) Ms. Sesler negates confidentiality as an unnecessary third-party public-relations consultant. | | |
| 3-4 | Poster with key talking points re lease amendment | Jeff Aluotto, Thomas Gabelman, Roger Friedman, Anne Sesler, Theresa Giglio | No:  1) No showing that draft publicity talking points regarding lease amendments are related to legal advice. 2) Ms. Sesler negates confidentiality as an unnecessary third-party public-relations consultant. | No | |
| 5-7 | Email circulating proposed joint press statement reflecting additional input from Bengals | Thomas Gabelman, Todd Portune, Denise Driehaus, Chris Monzel, Jeff Aluotto, Rodger Friedmann, Anne Sesler, Patrick Woodside | No:  1) cover emails circulating and inviting comment on a draft joint press statement with Bengals organization are not privileged communications. 2) no evidence provided that content is related to Board legal advice. 3) Ms. Sesler negates confidentiality as an unnecessary third party public relations consultant. | No | |
| 8-9 | Attachment- Proposed Joint press statement reflecting input from Bengals | | No:  1) a draft joint press statement with Bengals organization is not a privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) Ms. Sesler negates confidentiality as an unnecessary third party to emails to which the draft is attached. | No | |

| | | | | |
|---|---|---|---|---|
| 10-11 | Email circulating proposed joint press statement reflecting additional input from Bengals | Thomas Gabelman, Todd Portune, Denise Driehaus, Chris Monzel, Jeff Aluotto, Rodger Friedmann, Anne Sesler, Patrick Woodside | No:  1) cover emails circulating and inviting comment on a draft joint press statement with Bengals organization are not privileged communications. 2) no evidence provided that content is related to Board legal advice. 3) Ms. Sesler negates confidentiality as an unnecessary third party public relations consultant. | No | |
| 12-13 | Proposed Joint press statement reflecting input from Bengals | | No:  1) a draft joint press statement with Bengals organization is not a privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) Ms. Sesler negates confidentiality as an unnecessary third party to emails to which the draft is attached. | No | |
| 14-15 | Email circulating proposed joint press statement | Thomas Gabelman, Todd Portune, Denise Driehaus, Chris Monzel, | No:  1) cover emails circulating and inviting comment on a draft joint press statement with | | |

| | | | | |
|---|---|---|---|---|
| | reflecting additional input from Bengals | Jeff Aluotto, Rodger Friedmann, Anne Sesler, Patrick Woodside | Bengals organization are not privileged communications. 2) no evidence provided that content is related to Board legal advice. 3) Ms. Sesler negates confidentiality as an unnecessary third party public relations consultant. | | |
| 16-19 | Proposed Joint press statement reflecting input from Bengals | | No: 1) drafts of joint press statement with Bengals organization are not privileged communications. 2) no evidence provided that content is related to Board legal advice. 3) Ms. Sesler negates confidentiality as an unnecessary third party to emails to which the drafts are attached. | No | |
| 20-22 | Forwarded message from Rodger Friedmann, communications between counsel for the Bengals and counsel for Hamilton County | | No: 1) first cover email (circulating attached email) is not privileged. 2) remaining emails between Board counsel and Bengals counsel and staff regarding draft joint press statement are not privileged and cannot be made so by communicating them between Board and its counsel. 3) no evidence provided that content is related to Board legal advice. | No | **Yes:** Personal email address of atty. Friedmann is non-record that may be redacted |
| 23-24 | Attachment from forwarded message | | No: 1) a draft joint press statement with Bengals organization is not a privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) Content that is not privileged cannot be made so by communicating it between attorney and client. | No | |
| 25-26 | Email circulating proposed outline and memorandum of understanding for the terms of an agreement between the Bengals and Hamilton county | Thomas Gabelman, Todd Portune, Denise Driehaus, Chris Monzel, Jeff Aluotto, Rodger Friedmann, Margaret Grossman | No: 1) Cover emails circulating and inviting comment on attachments are not privileged communications. | No | |
| 27-30 | Draft outline of proposed public-private partnership structure attached to p. 25-26 email | | No: 1) draft structural terms of partnership is not privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) draft simply reflects negotiation position. | No: 1) No evidence provided that any content derives independent economic value from not being generally | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | known.  2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
| 31-32 | Draft MOU attached to p. 25-26 email | | No:  1) draft structural terms of partnership is not privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) draft simply reflects negotiation position. | No:  1) No evidence provided that any content derives independent economic value from not being generally known.  2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
| 33-34 | Attorney seeking input from county consultant about an announcement | Thomas Gabelman, Anne Sesler, Jeff Aluotto, Rodger Friedman | No:  1) cover email circulating and inviting comment on a draft joint press statement with Bengals organization is not privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) Ms. Sesler negates confidentiality as an unnecessary third party public relations consultant. | No | |
| 35-36 | Attachment to p. 33-34 email | | No:  1) a draft joint press statement with Bengals organization is not a privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) Ms. Sesler negates confidentiality as an unnecessary third party to emails to which the draft is attached. | No:  1) No evidence provided that any content derives independent economic value from not being generally known.  2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
| 37-38 | Email in re: an announcement | Thomas Gabelman, Jeff Aluotto, Rodger Friedmann | No:  1) cover email circulating and inviting comment on a draft joint press statement with Bengals organization is not privileged communication. 2) no evidence provided that | No | |

| | | | | | |
|---|---|---|---|---|---|
| | | | content is related to Board legal advice. | | |
| 39-40 | Attachment to p. 37-38 email | | No: 1) a draft joint press statement with Bengals organization is not a privileged communication. 2) no evidence provided that content is related to Board legal advice. | No: 1) No evidence provided that any content derives independent economic value from not being generally known. 2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
| 41-42 | Email circulating a draft negotiation matrix | Thomas Gabelman, Jeff Aluotto, Rodger Friedmann, Patrick Woodside | No: 1) Cover emails circulating and inviting comment on attachments are not privileged communications. | No | |
| 43-50 | Attachment to p. 41-42 email. "Draft document describing the negotiation between Hamilton County and Bengals" | | No: 1) draft structural terms of partnership is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No: 1) No evidence provided that any content derives independent economic value from not being generally known. 2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
| 51 | Email circulating a draft Memorandum of Understanding | Thomas Gabelman, Rodger Friedmann, Patrick Woodside, Jeff Aluotto | No: 1) Cover email circulating and inviting comment on attachment is not privileged communication. | No | |
| 52-53 | Attachment to p. 51 email | Draft MOU | No: 1) draft structural terms of partnership is not privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) draft simply reflects negotiation position. | No: 1) No evidence provided that any content derives independent economic value from not being generally known. 2) Any benefit of confidentiality expired when negotiations | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | concluded in final agreement. | |
| 54-58 | Attachment to p. 51 email | Draft outline of proposed public-private partnership structure | No:  1) draft structural terms of partnership is not privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) draft simply reflects negotiation position. | No:  1) No evidence provided that any content derives independent economic value from not being generally known.  2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
| 59-60 | Circulating talking point in re County Bengals Announcement | Thomas Gabelman, Jeff Aluotto, Rodger Friedmann | No:  1) cover email circulating and inviting comment on a draft joint press statement with Bengals organization is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 61-62 | Attachment to p. 59-60 email | | No:  1) a draft joint press statement with Bengals organization is not a privileged communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 63-64 | Circulating draft negotiation matrix | Thomas Gabelman, Jeff Aluotto, Rodger Friedmann, Patrick Woodside | No:  1) Cover email circulating attachment is not privileged communication. | No | |
| 65-72 | Attachment to p. 63-64 email | | No:  1) draft structural terms of partnership is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No:  1) No evidence provided that any content derives independent economic value from not being generally known.  2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
| 73-74 | Circulating draft outline | Thomas Gabelman, Jeff Aluotto, Rodger Friedmann, Patrick Woodside | No:  1) Cover email circulating attachment is not privileged communication. | No | |

| 75-82 | Attachment to p. 73-74 email | | No:  1) draft structural terms of partnership is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No:  1) No evidence provided that any content derives independent economic value from not being generally known.  2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
|---|---|---|---|---|---|
| 83 | Negotiation points discussion with counsel in 11/12/18 email | Jeff Aluotto, Roger Friedmann, and Thomas Gabelman | No:  1) Discussion of purely business terms is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No:  1) No evidence provided that any content derives independent economic value from not being generally known.  2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
| 83-86 | Forwarded message from Bengals counsel | | No:  1) email and attached draft between Board counsel and third-party Bengals counsel and staff regarding budget is not privileged and cannot be made so by communicating it between Board and its counsel. | No:  1) No evidence provided that any content derives independent economic value from not being generally known.  2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
| 87 | Forwarding draft document to other county employees | Jeff Aluotto, Roger Friedmann, and Joe Feldkamp | No:  1) Discussion of purely business terms is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 87-88 | Forwarded | | No:  1) email and attached | No | |

| | | | | | |
|---|---|---|---|---|---|
| | message from Bengals counsel | | draft between Board counsel and third-party Bengals counsel and staff regarding lease is not privileged and cannot be made so by communicating it between Board and its counsel. | | |
| 89-96 | Document attached to forwarded message | | No: 1) draft structural terms of partnership is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No: 1) No evidence provided that any content derives independent economic value from not being generally known. 2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
| 97-98 | Forwarding draft outline for review by clients | Thomas Gabelman, Jeff Aluotto, Rodger Friedmann, Patrick Woodside | No: 1) Cover email circulating attachment is not privileged communication. | No | |
| 99-106 | Attachment to p. 97-98 email | | No: 1) draft structural terms of partnership is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No: 1) No evidence provided that any content derives independent economic value from not being generally known. 2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
| 107 | Forwarding draft outline for review by clients | Thomas Gabelman, Jeff Aluotto, Rodger Friedmann, Patrick Woodside | No: 1) Cover email circulating attachment is not privileged communication. | No | |
| 108-115 | Attachment to p. 107 email | | No: 1) draft structural terms of partnership is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No: 1) No evidence provided that any content derives independent economic value from not being generally | |

| | | | | known.  2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
|---|---|---|---|---|---|
| 116 | Discussing negotiation points | Thomas Gabelman, Jeff Aluotto, Rodger Friedmann, Patrick Woodside | No:  1) Discussion of purely business terms is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 116-118 | Forwarded messages from Bengals counsel and between counsel for Hamilton County and counsel for the Bengals | | No:  1) email and attached draft between Board counsel and third-party Bengals counsel and staff regarding lease is not privileged and cannot be made so by communicating it between Board and its counsel. | No | |
| 119-125 | Attachment to p. 116-118 emails | | No:  1) draft structural terms of partnership is not privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) attachment to email involving Bengals counsel and staff is not privileged and cannot be made so by communicating it between Board and its counsel. | No:  1) No evidence provided that any content derives independent economic value from not being generally known.  2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
| 126 | Message forwarding a message from another Hamilton county employee | Denise Driehaus, Jeff Aluotto | No:  1) This is not a communication between attorney and client, there is no attorney in this communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 126 | Forwarded message between two Hamilton County Employees | | No:  1) This is not a communication between attorney and client, there is no attorney in this communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 126-129 | Forwarded message between Hamilton County employees and counsel in re: drafting documents | | No:  1) Discussion between Board member and county employee of purely business terms is not privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) | No:  1) No evidence provided that any content derives independent economic | |

| | | | | | |
|---|---|---|---|---|---|
| | | | counsel is only cc:d. | value from not being generally known. 2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
| 129-130 | Forwarded message between Hamilton County employees and counsel in re: drafting documents | | No: 1) Cover email circulating attachment is not privileged communication. 2) Notice regarding meeting is not privileged communication. | No | |
| 131 | Email asking attorney to forward another email to a Hamilton county employee | Jeff Aluotto, Thomas Gabelman | No: 1) Request to forward email is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | | |
| 131-132 | Email about financial aspects of the deal | Thomas Gabelman, Jeff Aluotto | No: 1) Discussion of purely business terms is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No: 1) No evidence provided that any content derives independent economic value from not being generally known. 2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
| 132-133 | Email between Hamilton County Attorneys | | No: 1) Discussion of purely business terms is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No: 1) No evidence provided that any content derives independent economic value from not being generally known. 2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
| 134-136 | Email about financial aspects | Jeff Aluotto, Thomas Gabelman, Roger | No: 1) Discussion of purely business terms is not | No: 1) No evidence | |

| | | | | |
|---|---|---|---|---|
| | of the deal | Friedmann, Patrick Woodside | privileged communication. 2) no evidence provided that content is related to Board legal advice. | provided that any content derives independent economic value from not being generally known. 2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
| 137-139 | Discussion of financial aspects of the deal | Jeff Aluotto, Thomas Gabelman, Roger Friedmann, Patrick Woodside | No: 1) Discussion of purely business terms is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No: 1) No evidence provided that any content derives independent economic value from not being generally known. 2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
| 140 | Discussion about negotiation between two Hamilton County Employees | Jeff Aluotto, Joe Feldkamp, Roger Friedmann, Lisa Doerger | No: 1) Discussion between Board member and county employee of purely business terms is not privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) counsel is only cc:d. | No: 1) No evidence provided that any content derives independent economic value from not being generally known. 2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
| 140-142 | Forwarded email from Joe Feldcamp to Jeff Aluotto | | No: 1) Discussion between Board member and county employee of purely business terms is not privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) counsel is only cc:d. | No: 1) No evidence provided that any content derives independent economic value from not being | |

| | | | | generally known. 2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
|---|---|---|---|---|---|
| 142 | Forwarded email between Hamilton County Employees and counsel | | No: 1) Cover email circulating attachment is not privileged communication. | No: 1) No evidence provided that any content derives independent economic value from not being generally known. 2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | **Yes:** Personal email address of atty. Friedmann is non-record that may be redacted |
| 143-146 | Continuation of that email | | No: 1) First sentence regarding meeting is not privileged communication. 2) remainder discussing purely business terms is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No: 1) No evidence provided that any content derives independent economic value from not being generally known. 2) Any benefit of confidentiality expired when negotiations concluded in final agreement. | |
| 147 | Confirmation of a meeting place | Jeff Aluotto, Roger Friedmann | No: 1) All three emails concern scheduling of meeting, which is not privileged communication. | No | **Yes:** Personal email address of atty. Friedmann is non-record that may be redacted |
| 148-151 | Continuation of that email | | No: 1) Discussion of purely business terms is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 152-155 | Negotiation points | Joe Feldcamp, Jeff Aluotto, Roger | No: 1) Discussion between Board member and county | No | |

| | | | | | |
|---|---|---|---|---|---|
| | | Friedmann, Lisa Doerger | employee of purely business terms is not privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) counsel is only cc:d on Feldkamp email. | | |
| 156-165 | Attachments to email, draft negotiation matrix | | No:  1) draft structural terms of partnership is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 166 | Email thread about lease negotiations | Jeff Aluotto, Roger Friedmann, Thomas Gabelman | **Yes:**  Discussion with Board attorney of legal effect of proposed terms. Only the message text is privileged communication, and not the associated header, salutation, signature block, and other metadata. | No | **Yes:** Personal email address of atty. Friedmann is non-record that may be redacted |
| 167-169 | Forward of business proposal summary | Jeff Aluotto, Roger Friedmann, Thomas Gabelman | No:  1) Discussion of purely business terms is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 170-173 | Email thread about lease negotiations | Jeff Aluotto, Thomas Gabelman, Roger Friedmann, Joe Feldcamp, Lisa Doerger, John Burggen | No:  1) Discussion of purely business terms is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 174-184 | Attachments to email, draft negotiation matrix | | No:  1) draft structural terms of partnership is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 185-186 | Email thread about effect of lease terms | Jeff Aluotto, Thomas Gabelman, Roger Friedmann, Patrick Woodside | **Yes:**  Discussion with Board attorney of legal effect of proposed terms. Only the message text is privileged communication, and not the associated header, salutation, signature block, and other metadata. | No | |
| 186-189 | Email forwarding proposed revisions | Jeff Aluotto, Thomas Gabelman, Roger Friedmann, Patrick Woodside | No:  1) Discussion of purely business terms is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 190-191 | Email thread about hiring a consultant | Jeff Aluotto, Roger Friedmann, Thomas Gabelman | No:  1) Discussion of purely business terms is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 192-195 | Email thread about lease negotiations | Jeff Aluotto, Thomas Gabelman, Roger Friedmann, Patrick | **Yes, in part:**  First email is commissioner inquiry to Board attorney of legal effect of | No | |

| | | Woodside | proposed term. Only the message text is privileged communication, and not the associated header, salutation, signature block, and other metadata. No: 2) Following the first email, discussion of purely business terms is not privileged communication. 3) no evidence provided that content is related to Board legal advice. | | |
|---|---|---|---|---|---|
| 196-198 | Email about lease negotiations | Thomas Gabelman, Jeff Aluotto, Roger Friedmann, Patrick Woodside | No: 1) Discussion of purely business terms is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 199-202 | Attachments to email, draft negotiation matrix | | No: 1) draft structural terms of partnership is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 203-205 | Email about lease negotiations | Thomas Gabelman, Jeff Aluotto, Roger Friedmann, Patrick Woodside, Theresa Giglio | No: 1) Discussion of purely business terms is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 206-216 | Attachments to email, draft negotiation matrix | | No: 1) draft structural terms of partnership is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 217-218 | Email about lease negotiations | Thomas Gabelman, Jeff Aluotto, Roger Friedmann, Patrick Woodside | No: 1) Cover email forwarding business proposal is not privileged communication. | No | |
| 219-229 | Attachments to email, draft negotiation matrix | | No: 1) draft structural terms of partnership is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 230 | Request for a phone call | Thomas Gabelman, Jeff Aluotto, Roger Friedmann, Patrick Woodside | No: 1) request for meeting is not privileged communication. | No | |
| 230-231 | Email about negotiation | Thomas Gabelman, Jeff Aluotto, Roger Friedmann, Patrick Woodside, Robert Mecklenborg | No: 1) Cover email forwarding business proposal is not privileged communication. | No | |
| 232-245 | Attachment to email, draft lease | | No: 1) introductory communication from Bengals is not a privileged communication. 2) Bengals response to draft structural terms of partnership is not privileged communication. 3) no evidence provided that | No | |

| | | | | | |
|---|---|---|---|---|---|
| | | | content is related to Board legal advice. | | |
| 246-247 | Email about negotiation | Thomas Gabelman, Jeff Aluotto, Roger Friedmann, Patrick Woodside, Robert Mecklenborg | No:  1) Cover email forwarding business proposal is not privileged communication. | No | |
| 248-260 | Attachment to email, draft lease | | No:  1) introductory communication from Bengals is not a privileged communication. 2) Bengals response to draft structural terms of partnership is not privileged communication. 3) no evidence provided that content is related to Board legal advice. | No | |
| 261 | Email forwarding message from Bengals counsel | Jeff Aluotto, Todd Portune, Chris Monzel, Denise Driehaus, Victoria Parks, Lanita Hanekamp, Alex Linser, John Bruggen, Judy Boyko, Roger Friedmann | No:  1) Cover email forwarding other email is not privileged communication. 2) forwarded email from Bengals staff not privileged communication. | No | |
| 262-263 | Email chain about letter to Bengals | Theresa Giglio, Thomas Gabelman, Jeff Aluotto, Roger Friedmann | No:  1) Cover email forwarding letter to Bengals is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 264-266 | Attached letter to Bengals | | No: 1) signed, apparently since-delivered letter to Bengals. | No | |
| 267-268 | Email about letter to Bengals | Thomas Gabelman, Jeff Aluotto, Theresa Giglio, Roger Friedmann | No:  1) Cover email forwarding draft letter to Bengals and giving instructions for delivery is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 269-271 | Attached letter to Bengals | | No:  1) no evidence provided that content is related to Board legal advice. | No | |
| 272-273 | Email about letter to Bengals | Thomas Gabelman, Jeff Aluotto, Roger Friedmann, Jennifer Goins | No:  1) Cover email forwarding draft letter to Bengals and discussing execution and copies is not privileged communication. 2) no evidence provided that content is related to Board legal advice. | No | |
| 274-276 | Attached draft letter to Bengals | | No:  1) no evidence provided that content is related to Board legal advice. | No | |
| 277 | Email to Bengals counsel with attached Giglio email and forwarded announcement | From: Thomas Gabelman To: Bob Bedinghaus, Stuart Dornette, Aaron Herzig Cc: Roger Friedmann, Jeff Aluotto | No:  1) Bengals staff and counsel negate confidentiality as third parties to cover email with attachments. 2) no evidence provided that content is related to Board legal | No | |

| | | | | | |
|---|---|---|---|---|---|
| | | | advice. 3) not a communication between attorney and client. | | |
| 277-278 | Email attaching Bengals announcement | From: Theresa Giglio to Thomas Gabelman | No: 1) attached to email to third party. 2) Mere administrative cover email. 2) no evidence provided that content is related to Board legal advice. | No | |
| 279-280 | Attached announcement | | No: 1) final joint press statement with Bengals organization, implicitly approved by vote in public meeting, is not a privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) attached to email to third party. | No | |
| 281 | Email about Bengals announcement | From: Thomas Gabelman To: Bob Bedinghaus, Stuart Dornette, Aaron Herzig Cc: Roger Friedmann, Jeff Aluotto, Patrick Woodside | No: 1) Bengals staff and counsel negate confidentiality as third parties to cover email with attachments. 2) no evidence provided that content is related to Board legal advice.3) not a communication between attorney and client. | No | |
| 281-282 | Email attaching Bengals announcement | From: Margaret Grossman To: Thomas Gabelman | No: 1) attached to email to third party. 2) Mere administrative cover email. 2) no evidence provided that content is related to Board legal advice. | | |
| 283-284 | Attached announcement | | No: 1) draft joint press statement with Bengals organization is not a privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) attached to email to third party. | No | |
| 285 | Email about Bengals announcement | From: Thomas Gabelman To: Bob Bedinghaus, Stuart Dornette, Aaron Herzig Cc: Roger Friedmann, Jeff Aluotto | No: 1) Bengals staff and counsel negate confidentiality as third parties to cover email with attachments. 2) no evidence provided that content is related to Board legal advice.3) not a communication between attorney and client. | No | |
| 285-286 | Email attaching Bengals announcement | From: Margaret Grossman To: Thomas Gabelman | No: 1) attached to email to third party. 2) Mere administrative cover email. 2) no evidence provided that content is related to Board legal advice. | No | |
| 287-288 | Attached announcement | | No: 1) draft joint press statement with Bengals organization is not a privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) attached to email to third party. | No | |
| 289 | Email about | From: Thomas | No: 1) Bengals staff and | No | |

| | | | | |
|---|---|---|---|---|
| | Bengals announcement | Gabelman To: Bob Bedinghaus, Stuart Dornette, Aaron Herzig Cc: Roger Friedmann, Jeff Aluotto, Patrick Woodside | counsel negate confidentiality as third parties to cover email with attachments. 2) no evidence provided that content is related to Board legal advice.3) not a communication between attorney and client. | |
| 290-291 | Attached announcement | | No:  1) draft joint press statement with Bengals organization is not a privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) attached to email to third party. | No |
| 292-293 | Email attaching revised MOU | From: Thomas Gabelman To: Stuart Dornette, Daniel Fausz, Aaron Herzig, Bob Bedinghaus Cc: Roger Friedmann, Jeff Aluotto, Patrick Woodside | No:  1) Bengals staff and counsel negate confidentiality as third parties to cover email with attachments. 2) no evidence provided that content is related to Board legal advice.3) not a communication between attorney and client. | No |
| 294-295 | Revised Memorandum of Understanding | | No:  1) draft MOU with Bengals organization is not a privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) attached to email to third party. | No |
| 296-299 | Revised Lease Amendment | | No:  1) draft outline of agreement with Bengals organization is not a privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) attached to email to third party. | No |
| 300-303 | Emails discussing terms of lease | Between: Stuart Dornette, Thomas Gabelman Cc: Jeff Aluotto, Roger Friedmann, Patrick Woodside, Bob Bedinghaus, Aaron Herzig | No:  1) Bengals staff and counsel negate confidentiality as third parties to emails with attachments. 2) no evidence provided that content is related to Board legal advice. 3) not communications between attorney and client. | No |
| 304-311 | Attachment, negotiation matrix | | No:  1) draft structural terms of partnership is not privileged communication.  2) no evidence provided that content is related to Board legal advice. 3) attached to email to third party. | No |
| 312-323 | Emails regarding meeting with CSMO | Thomas Gabelman, Bob Bedinghaus Cc: Stuart Dornette, Aaron Herzig, Roger Friedmann, Jeff Aluotto, Patrick Woodside | No:  1) Bengals staff and counsel negate confidentiality as third parties to emails. 2) scheduling of meeting is not privileged communication. 3) no evidence provided that content is related to Board legal advice. 4) not communications between attorney and client. | No |
| 324- | Emails discussing | Thomas Gabelman, Bob | No:  1) Bengals staff and | No |

| | | | | | |
|---|---|---|---|---|---|
| 328 | terms of lease | Bedinghaus, Stuart Dornette, Cc: Aaron Herzig, Roger Friedmann, Jeff Aluotto, Patrick Woodside | counsel negate confidentiality as third parties to emails. 2) proposed scheduling of meeting in second email is not privileged communication. 3) no evidence provided that content is related to Board legal advice. 4) not communications between attorney and client. | | |
| 329-334 | Emails discussing terms of lease | Thomas Gabelman, Stuart Dornette Cc: Jeff Aluotto, Roger Friedmann, Patrick Woodside, Bob Bedinghaus, Aaron Herzig | No:  1) Bengals staff and counsel negate confidentiality as third parties to emails and attachments. 2) no evidence provided that content is related to Board legal advice.3) not communications between attorney and client. | No | |
| 335-342 | Attachment, negotiation matrix | | No:  1) draft structural terms of partnership is not privileged communication.  2) no evidence provided that content is related to Board legal advice. 3) attached to email to third party. | No | |
| 343-346 | Email chain about lease terms | Between: Stuart Dornette, Thomas Gabelman Cc: Jeff Aluotto, Roger Friedmann, Patrick Woodside, Bob Bedinghaus, Aaron Herzig | No:  1) Bengals staff and counsel negate confidentiality as third parties to emails and attachments. 2) no evidence provided that content is related to Board legal advice.3) not communications between attorney and client. | No | |
| 347-360 | Attachment, negotiation matrix | | No:  1) draft structural terms of partnership is not privileged communication.  2) no evidence provided that content is related to Board legal advice. 3) attached to email to third party. | No | |
| 361-363 | Email chain about lease terms | Between: Thomas Gabelman, Stuart Dornette Cc: Jeff Aluotto, Roger Friedmann, Patrick Woodside, Bob Bedinghaus, Aaron Herzig | No:  1) Bengals staff and counsel negate confidentiality as third parties to emails and attachments. 2) no evidence provided that content is related to Board legal advice.3) not communications between attorney and client. | No | |
| 364-371 | Attachment, negotiation matrix | | No:  1) draft structural terms of partnership is not privileged communication.  2) no evidence provided that content is related to Board legal advice. 3) attached to email to third party. | No | |
| 372-274 | Email chain about lease terms | Between: Thomas Gabelman, Stuart Dornette Cc: Jeff Aluotto, Roger Friedmann, Patrick Woodside, Bob | No:  1) Bengals staff and counsel negate confidentiality as third parties to emails and attachments. 2) no evidence provided that content is related to Board legal advice.3) not | No | |

| | | Bedinghaus, Aaron Herzig | communications between attorney and client. | | |
|---|---|---|---|---|---|
| 375-381 | Attachment, negotiation matrix | | No: 1) draft structural terms of partnership is not privileged communication. 2) no evidence provided that content is related to Board legal advice. 3) attached to email to third party. | No | |

## Conclusion

{¶62} Based on the pleadings, affidavits, and documents submitted in this action, I recommend the court order respondent to provide requester with copies of all withheld records other than as noted in the table of permitted exceptions. I further recommend the court find that respondent did not provide copies or any other response within a reasonable period of time in violation of R.C. 149.43(B)(1). I recommend the court order that requester is entitled to recover from respondent the amount of the filing fee of twenty-five dollars and any other costs associated with the action that it has incurred. I recommend costs be assessed to respondent.

{¶63} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*


JEFF CLARK
Special Master

**Filed August 25, 2020**
**Sent to S.C. Reporter 10/9/20**